*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0043p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

VON CLARK DAVIS,

>*Petitioner-Appellant,*

>*v.*

>No. 02-3227

RALPH COYLE, Warden,

>*Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 97-00402—James L. Graham, District Judge.

Argued: December 8, 2005

Decided and Filed: January 29, 2007

Before: DAUGHTREY, COLE, and GIBBONS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Alan M. Freedman, MIDWEST CENTER FOR JUSTICE, LTD., Evanston, Illinois, for Appellant. Michael L. Collyer, OFFICE OF THE ATTORNEY GENERAL, Cleveland, Ohio, for Appellee. **ON BRIEF:** Alan M. Freedman, MIDWEST CENTER FOR JUSTICE, LTD., Evanston, Illinois, Laurence E. Komp, ATTORNEY AT LAW, Manchester, Missouri, for Appellant. Michael L. Collyer, OFFICE OF THE ATTORNEY GENERAL, Cleveland, Ohio, for Appellee.

DAUGHTREY, J., delivered the opinion of the court, in which COLE, J., joined. GIBBONS, J. (pp. 18-19), delivered a separate opinion concurring in the judgment.

_____

## OPINION

_____

MARTHA CRAIG DAUGHTREY, Circuit Judge. The petitioner, Von Clark Davis, was convicted of aggravated murder and sentenced to death by a three-judge panel in Ohio state court. The Ohio Court of Appeals affirmed his conviction and sentence, but the state supreme court vacated the sentence and remanded the case to the trial court for resentencing. After refusing to permit Davis to introduce new evidence at the rehearing, the same three-judge panel again imposed the death penalty, finding that because of his criminal history and "explosive personality disorder," Davis would not be deterred from future criminal conduct by a life sentence. Following his unsuccessful appeal of the second sentencing order, Davis filed a petition for a writ of habeas corpus in federal court, contending, among other things, that his rights under the Eighth and Fourteenth Amendments to the United States Constitution had been violated when he was denied the

1

opportunity to present evidence of his good behavior in prison during the five years he had spent on death row between the first and second sentencing hearings. Because the decisions in the Ohio courts rejecting this contention and upholding the sentencing order were both contrary to and unreasonable applications of the rule announced by the United States Supreme Court in *Skipper v. South Carolina*, 476 U.S. 1 (1986), we reverse the district court's denial of relief and grant the petitioner a conditional writ of habeas corpus.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

In 1984, a three-judge panel convicted Davis of capital murder in the death of Suzette Butler, and the Ohio Court of Appeals affirmed the conviction on direct appeal. *See State v. Davis*, No. CA84-06-071, 1986 WL 5989 (Ohio Ct. App. May 27, 1986) (*Davis I*). As part of its review, the Ohio Supreme Court provided the following statement of facts with regard to Davis's conviction:

> At approximately 7:40 p.m. on December 12, 1983, officers of the Hamilton Police Department arrived at the scene of a shooting at American Legion Post 520 (hereinafter "the Legion") . . . . Lying on the pavement approximately six feet outside the front door of the Legion was the deceased victim, Suzette Butler. An autopsy performed the following day by the county coroner revealed that Butler had died as a result of multiple gunshot wounds to the left side of her head. One of the entrance wounds suggested that the muzzle of the murder weapon was within four to twenty inches of the victim's head at the time the weapon was fired.

> On the day of the shooting, Butler met her friend, Mona Aldridge, at the Legion sometime between 5:00 p.m. and 6:30 p.m. Appellant, Von Clark "Red" Davis, arrived shortly thereafter, and eventually sat at a table with Butler and Aldridge. Apparently, [Davis] and Butler had cohabited for several months, but had recently separated. After a brief period of time, [Davis] and Butler arose from the table and walked out the front door. Prior to leaving, Butler told Aldridge that she would be "right back" and asked Aldridge to watch her jacket, cigarettes and drink. Several minutes later, a concerned Aldridge went to the front door of the Legion to look for Butler. Aldridge opened the door slightly and discovered [Davis] pointing a gun at Butler's head. Aldridge panicked and went back inside the bar. Momentarily, others followed her into the bar saying that someone had been shot.

> The shooting was witnessed by Reginald Denmark and Cozette Massey. The couple had been on a walk observing Christmas lights. As they were walking, they saw a man and a woman talking in front of the Legion. The man and woman did not appear to be arguing. Two shots rang out. As the woman (later identified as Butler) fell, another shot was fired. Finally, ". . . after she was down, he bent down and shot her in the head." Both Massey and Denmark ultimately identified [Davis] as the person who shot Butler.

> It was later established that on the day of Butler's murder, [Davis] had sought out Mark "Poppa" Lovette to "do him a favor" in exchange for sixty dollars. Along with a third party, Wade Coleman, a.k.a. Hank Stokes, [Davis] drove Lovette to a pawn shop and gave him money to purchase a handgun. Lovette purchased a Raven P .25 semi-automatic handgun and gave it to [Davis]. [Davis] again gave money to Lovette and had him purchase shells for the gun at a K Mart store. Lovette was then dropped off. [Davis] subsequently discovered that the K Mart shells did not fit the weapon. Lovette was picked up again, the shells were returned to K Mart, and [Davis] drove Lovette to a local gun shop. Lovette purchased a box of PMC .25 automatic shells and gave them to [Davis]. [Davis] then loaded the gun in the

presence of Lovette and Coleman and placed the gun under the driver's seat of his car. Late that afternoon, Lovette and Coleman were dropped off separately.

*State v. Davis*, 528 N.E.2d 925, 926-27 (Ohio 1988) (*Davis II*).

At trial, Davis did not present either a heat of passion or a provocation defense. Instead, his counsel attempted to point out inconsistencies in the accounts of the shooting offered by state witnesses, and Davis also testified on his own behalf, maintaining that he had purchased the murder weapon as part of an exchange with "Silky Carr," a Kentuckian whom Davis asserted had been Butler's drug dealer. He also claimed that Butler owed "Silky Carr" money and "that he left 'Carr' and Butler talking in front of the Legion on the night of the murder." *Id.* at 927 n.5.

The Ohio Supreme Court affirmed Davis's convictions but vacated his sentence because the three-judge panel had improperly considered non-statutory aggravating circumstances during the penalty phase of the proceedings. *See id.* at 931-36. The court also considered for the first time whether to apply its holding in *State v. Penix*, 513 N.E.2d 744 (Ohio 1987), that a capital defendant whose death sentence is vacated on appeal following a jury verdict is ineligible to be resentenced to death, to defendants tried before a three-judge panel. The court declined to extend the holding in *Penix* and thus concluded that Davis was eligible to be resentenced to death. *See Davis II*, 528 N.E.2d at 936.

On remand, the same three-judge panel that originally convicted and sentenced Davis again imposed the death sentence upon the petitioner. Relying solely upon the record from the first sentencing hearing, the panel found that the only remaining, applicable aggravating factor – that Davis had been previously convicted of second-degree murder – outweighed the mitigating factors present beyond a reasonable doubt. The Ohio Court of Appeals affirmed this sentence as well, *see State v. Davis*, No. CA89-09-123, 1990 WL 165137 (Ohio Ct. App. Oct. 29, 1990) (*Davis III*), as did the Ohio Supreme Court. *See State v. Davis*, 584 N.E.2d 1192 (Ohio 1992) (*Davis IV*).

In 1993, Davis filed a petition for post-conviction relief in the state trial court and was granted an evidentiary hearing on a single issue – an alleged judicial conflict of interest. Relief was ultimately denied, however, by the Butler County Court of Common Pleas, the Ohio Court of Appeals affirmed the decision, *see State v. Davis*, No. CA95-07-124, 1996 WL 551432 (Ohio Ct. App. Sept. 30, 1996), and the Ohio Supreme Court denied further review. *See State v. Davis*, 674 N.E.2d 372 (Ohio 1997). Similarly, Davis's attempts to obtain relief pursuant to an application to reopen his direct appeal in the Ohio Court of Appeals, under Ohio Appellate Rule 26(B), were unsuccessful.

Meanwhile, in April 1997, Davis filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging 28 grounds for relief. In December 1997, the district court concluded that ten of Davis's claims had been procedurally defaulted. The district court subsequently granted Davis's motion to amend his petition by adding 14 issues but later concluded that the additional issues were also procedurally barred. Ultimately, the district court also held that the remaining 18 issues were either defaulted or without merit, denied habeas relief, and dismissed Davis's § 2254 petition. The court did grant a certificate of appealability on 18 issues, and, at the petitioner's request, we certified one additional question.

On appeal, Davis has now abandoned several of those certified questions. Most of the remaining issues present challenges to the process of the petitioner's resentencing, including his contentions that he should have been allowed to withdraw his jury waiver prior to resentencing because it had been involuntarily entered at the time of his original trial, that it was error to deny his requests both for the appointment of additional experts and to introduce new mitigation evidence, that the three-judge panel should not have separated during deliberations, and that the Ohio Court

of Appeals did not review adequately on direct appeal either his original sentence or the reimposed sentence. Davis also challenges the district court's determination that several of the issues in his habeas petition were procedurally defaulted either because they were not raised on direct appeal in the state courts or because they were raised in an untimely motion to reopen his appeal in state court.

## II. *ANALYSIS*

### A. *Standard of Review*

We review the legal basis for a district court's dismissal of a § 2254 petition *de novo* and the court's factual findings underlying its analysis for clear error. *See Hill v. Hofbauer*, 337 F.3d 706, 710 (6th Cir. 2003). Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) (AEDPA), the district court may not grant a habeas petition with respect to any claim that was adjudicated on the merits in the state courts unless that adjudication resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. *See* 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 413 (2000); *Hill*, 337 F.3d at 711. Under the "unreasonable application" clause, a federal court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *See Williams*, 529 U.S. at 413; *Hill*, 337 F.3d at 711. An unreasonable application of federal law differs from an incorrect application of federal law, and on federal habeas review the district court may not issue the writ simply because the court concludes that the state court applied clearly established federal law erroneously or incorrectly. *See Williams*, 529 U.S. at 410-12.

Because the petitioner filed his habeas petition in April 1997, one year after the effective date of AEDPA, most of the matters raised on appeal are subject to review under the standard set out above. When that is not the case, we will note the appropriate standard in our discussion of the issues.

### B. *The Sentencing Process*

The petitioner first raises a number of issues challenging the process by which the trial court sentenced Davis to death. In order to place these issues in proper context, we recount, this time in detail, many of the facts pertinent to the sentencing proceedings.

The presentence report prepared by probation officer John Bohlen prior to Davis's initial sentencing in 1984 indicated that Davis had been released on parole from incarceration in an unrelated case in 1980, after serving a ten-year sentence for the 1970 stabbing death of his wife, Ernestine. The report further noted that Davis had entered prison with an eighth-grade education but, while incarcerated, had earned not only the equivalent of a high school diploma through the General Educational Development Testing Service (GED), but also had fulfilled the requirements for an associate's degree in business administration, received certificates in auto body repair and in masonry, and completed job training as a dental technician. Furthermore, following his parole, Davis completed an additional three years of course work toward a bachelor's degree at Urbana College.

At the first sentencing hearing, Davis presented testimony from two family members – his mother, Alister Tipton, and his step-father, Charles Tipton. The parents had married when Davis was a young teenager. According to Alister Tipton, Davis was the second oldest of her nine children and was a "good boy" and a "normal child." She further testified that during Davis's ten years in

prison following his earlier conviction, the family visited him regularly – at least once a month – and that Davis "was always in good spirits and . . . always talked about his work, how he was achieving in his work and in his school."

Dr. Roger H. Fisher, a clinical psychologist who had interviewed Davis in May 1984, detailed Davis's "successful vocational history," noting that Davis was "quite a hard working man, who is very dedicated to doing a good job for people who employ him and allow him to work for them." Fisher reasserted his findings, based on an earlier interview with Davis at the London Correctional Institution, that Davis was an "active-detached individual with schizoid trends" and could be classified as having a compulsive personality disorder. On cross-examination, however, Fisher stated that, based on his interview and examination of Davis, it was his opinion that Davis was "free of any mental disease or defect which would have impaired his capacity to appreciate the criminality of any conduct in which he engaged or to have conformed his conduct to the requirement of the law" at the time he was accused of murdering the victim in this case, Suzette Butler. Fisher further testified that Davis maintained his innocence at all times during their interview and relayed his theory that a drug dealer named Silky Carr was responsible for the death of Butler. Noting that Davis had been charged with two assaults on his wife, the latter one resulting in her death, as well as the death of Suzette Butler in this case, Fisher "assume[d] that the man [Davis] has difficulty relating to women in solving problems he has with them in a nonviolent way . . . and that's a psychological problem." He concluded that Davis could be suffering from an "explosive psychiatric disorder," which is "characteristic of persons who solve problems by becoming very overwrought and violent with little or no provocation and then settle back down and who are able to cope with things in a nonviolent way, but who seem to go over the deep end very quickly and very violently."

The state introduced evidence concerning Davis's involvement in the 1969 shooting and 1970 stabbing of Ernestine Davis, which provided the factual basis for the aggravating factor specified in Davis's capital indictment under Ohio Rev. Code § 2929.04(A)(5). Following the presentation of this evidence and arguments by counsel, the three-judge panel, constituted pursuant to the provisions of Ohio Rev. Code § 2929.022(A), sentenced Davis to death by electrocution, having unanimously found that any mitigating factors were outweighed, beyond a reasonable doubt, by the aggravating circumstances of the crime. As required by § 2929.03(F) of the Ohio Revised Code, the panel listed the specific mitigating factors it found to be present in this matter:

> (1) The Defendant adjusted well to prison routine and during his stay in prison, obtained a high school GED and an associate degree in Business Administration, and studied for and worked as a dental technician.
>
> (2) There has always been a good family relationship between the Defendant and all members of his family, including his step father.
>
> (3) Since his release on parole, he has maintained at least partial employment.
>
> (4) As testified by the psychologist, Defendant has a compulsory personality disorder or explosive disorder which may have contributed to the violence in this case.

The court further noted that the following aggravated circumstances had been proved beyond a reasonable doubt:

> (1) The manner by which the Defendant purchased the gun, used to kill the victim in this case.
>
> (2) The manner by which the Defendant purchased the ammunition for the gun.

(3)  The shooting of the victim, the firing at close range and finally placing the gun
almost against her skull and discharging the weapon.

(4)  The prior purposeful killing of his wife in 1970 by multiple stab wounds.

(5)  Committing the present offense while on parole for the murder of his wife.

In summary, the trial court observed:

The killing of the victim in this case was planned, calculated and designed by the
Defendant and carried out in an execution fashion.  Further, he had previously been
convicted of second degree Murder for the purposeful killing of his wife.  These
make it impossible for this panel to arrive at any other conclusion than that the
aggravated circumstances, proven beyond a reasonable doubt, outweigh the
mitigating factors.

Davis argued on direct appeal that the trial court had improperly considered non-statutory
aggravating factors in making its sentencing determination.  Given that only the fourth of the five
factors listed by the trial court corresponded to an aggravating factor enumerated in § 2929.04 of
the Ohio Revised Code, it is not surprising that the Ohio Court of Appeals agreed that the
consideration of non-statutory aggravating factors was improper.  *See Davis I*, 1986 WL 5989, at
**11.  Nevertheless, the appeals court held that reversal of Davis's death sentence was not
necessary.  The court reasoned that by finding Davis guilty of *a* statutory aggravating circumstance,
the trial court had rendered him eligible for the death penalty and that consideration of the non-
statutory aggravating factors did not entail the introduction of otherwise inadmissible evidence.  *See
id.* at **12.[1]

The Ohio Supreme Court reversed.  The court concluded that although Ohio Rev. Code
§ 2929.04(B) requires the trial court to consider the nature and circumstances of the offense, such
a directive cannot substitute for a statutory mandate that the sentencer weigh only enumerated,
proven, aggravating circumstances against particular mitigating factors.[2]  *See Davis II*, 528 N.E.2d
at 934-35.  Furthermore, the court found that it "c[ould not] accept independent review [by the court
of appeals] as a cure in this particular action because [it] cannot know if the result of the weighing
process by the three-judge panel would have been different had the impermissible aggravating
circumstances not been present."  *Id.* at 936.  Therefore, the court remanded the case to the trial
court "for *a new sentencing trial* at which the [improper factors] shall not be considered as
aggravating circumstances in the weighing process."  *Id.* (emphasis added).

Despite what appeared to be a clear mandate from the state supreme court, the reconstituted
three-judge panel declined to interpret the ruling to require a full sentencing trial, or even an
evidentiary hearing.  Instead, the trial court found it sufficient merely to reconsider the record from

---

[1] The statutory provision that mandates appellate review of every death sentence also empowers the Court of
Appeals independently to weigh the evidence in support of the sentence.  Ohio Rev. Code § 2929.05(A).  Pursuant to
this authority, the court concluded that the presence of the statutory aggravating circumstance in the case outweighed
the mitigating factors, beyond a reasonable doubt, thus justifying Davis's death sentence.  *See Davis I*, 1986 WL 5989,
at **12.

[2] At the time the Ohio Supreme Court vacated the original sentencing order, decisional law was not settled as
to whether a reviewing court must remand a case for resentencing upon its determination that the trial court considered
an improper aggravating factor.  The Ohio Supreme Court nevertheless specifically held that the independent review
conducted by the intermediate appellate court was not sufficient to bring the sentence within the Ohio General
Assembly's directive that a sentencing court examine specific factors that argue in favor of or against the imposition of
the death penalty.  *See Davis II*, 528 N.E.2d at 936 (citing *Proffitt v. Florida*, 428 U.S. 242, 258 (1976)).

the earlier proceeding, supplemented by argument from both Davis and the state. Indeed, at a non-evidentiary hearing held prior to Davis's resentencing, one of the trial judges on the panel justified the denial of Davis's motions to withdraw his jury waiver and to introduce new evidence by observing that the panel "got the impression from the Supreme Court of Ohio that they were simply telling us to again reflect upon the trial as it took place and the evidence as we received it to determine whether those aggravating circumstances proved beyond a reasonable doubt outweighed anything in mitigation thereof *as it existed then.*" (Emphasis added.)

Nevertheless, in response to Davis's motion to present additional evidence concerning his post-sentence prison behavior and psychological profile, the trial court gave the petitioner the opportunity to enter on the record summaries of the testimony that would have been offered by four witnesses Davis would have called at the resentencing hearing, had he been permitted to introduce new evidence. According to this proffer, Sergeant Gordy Pullman, Captain Oscar McGraw, and social worker Herb Wendler would have testified concerning Davis's adaptation to and good behavior on death row. Davis would also have called Dr. Fisher, who testified at the first sentencing hearing, to provide a "psychological update."

Taking into account only the record of the trial and first sentencing proceeding, the judges, not surprisingly, again imposed a death sentence upon Davis. The sentencing order issued by the court pursuant to Ohio Rev. Code § 2929.03(F) reiterated the four mitigating factors set out in the first sentencing opinion. The court then concluded, "As we are required by Section 2929.04(B), Ohio Revised Code, to consider the nature and circumstances of the offense, the history, character and background of the offender, and all of the factors in mitigation of the sentence of death presented herein, we find the aggravating circumstance, the Defendant's previous conviction of the prior purposeful killing of his wife in 1970, outweighs the mitigating circumstances beyond a reasonable doubt."

On appeal from the new sentencing order, the Ohio Court of Appeals ratified the action of the trial court, observing that "[i]t is basic law that a reversal and remand to the trial court for further proceedings has the effect of reinstating the cause in the trial court *in status quo ante*." *Davis III*, 1990 WL 165137, at **2. Because the error in Davis's original sentence "occurred at the deliberative state of the proceedings, *after* the evidence had been submitted to the court," the appellate court held that, upon remand, "it was not necessary for the panel to consider additional evidence." *Id.*

Although it, too, affirmed Davis's death sentence, the Ohio Supreme Court avoided explicit endorsement of this interpretation of its prior remand order, ruling instead that cases such as *Skipper v. South Carolina*, 476 U.S. 1 (1986), were factually distinguishable and, therefore, did not require that the petitioner be given the opportunity to present new evidence at the resentencing hearing. *See Davis IV*, 584 N.E.2d at 1194-95. Thus, the court held, because Davis had not been denied the opportunity to present all relevant mitigating evidence at his first sentencing trial, and because the trial court on remand again considered all the same evidence, "[Davis] was not denied the type of individualized consideration of relevant mitigating factors required in capital cases." *Id.* at 1195 (distinguishing *Lockett v. Ohio*, 438 U.S. 586 (1978); *Eddings v. Oklahoma*, 455 U.S. 104 (1982); and *Hitchcock v. Dugger*, 481 U.S. 393 (1987)). One justice dissented, concluding that in remanding the case for "a new sentencing trial," the Ohio Supreme Court had "intended the trial court to sentence the appellant after a full hearing, including the reintroduction of mitigating evidence from the first sentencing as well as any post-trial mitigating evidence." *Id.* at 1198-99 (Wright, J., dissenting).

**1. Introduction of Additional Evidence**

Davis now submits that the decision of the three-judge panel to exclude testimony concerning his exemplary behavior on death row in the time between the two sentencing hearings violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments, and that the state courts' decisions affirming the panel's ruling were contrary to the those of the Supreme Court of the United States in *Lockett*, *Eddings*, and *Skipper*. Based upon a careful examination of these opinions, we agree.

In *Lockett*, the Supreme Court considered the constitutionality of a former provision in the Ohio death penalty statute that did not permit a sentencing judge to consider, as mitigating evidence, factors such as the defendant's character, prior record, and age. *See* 438 U.S. at 597. The Court ruled in *Lockett* that "the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Id.* at 604.

The Court extended this decision in *Eddings*, in which it held unconstitutional a capital sentence imposed after the trial judge excluded evidence of the defendant's family history. "By holding that the sentencer in capital cases must be permitted to consider any relevant mitigating factor, the rule in *Lockett* recognizes that a consistency produced by ignoring individual differences is a false consistency." *Eddings*, 455 U.S. at 112. Thus, "[j]ust as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating evidence." *Id.* at 113-14 (emphasis in original).

Of course, the Court recognized that its opinions should not be taken as "limit[ing] the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or circumstances of his offense." *Lockett*, 438 U.S. at 604 n.12. But the Court has also made clear that evidence of the defendant's conduct while incarcerated may indeed be relevant to the question of his sentence. In *Skipper*, for example, the trial court had excluded as irrelevant evidence of the defendant's good behavior during the period of his incarceration between arrest and trial. The Supreme Court reversed Skipper's death sentence, holding that such evidence was relevant to refute the state's allegations of future dangerousness, and noting that "any sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what punishment to impose." *Skipper*, 476 U.S. at 5 (quoting *Jurek v. Texas*, 428 U.S. 262, 275 (1976)). Because, in the capital context, a sentencing authority may consider a defendant's past conduct as indicative of his probable future behavior, "evidence that the defendant would not pose a danger if spared (but incarcerated) must be considered potentially mitigating" and, under *Eddings*, may not be excluded from the sentencer's consideration. *Id.*

Hence, the core of the analysis in *Skipper* reflects the Court's understanding that the right of a defendant to present evidence of good behavior in prison is particularly relevant when a prediction of future dangerousness figures centrally in a prosecutor's plea for imposition of the death penalty. In *Skipper*, the right to produce such evidence was triggered specifically "by the prosecutor's closing argument, which urged the jury to return a sentence of death in part because petitioner could not be trusted to behave if he were simply returned to prison." *Id.* at 5 n.1. Thus, "it is not only the rule of *Lockett* and *Eddings* that requires that the defendant be afforded an opportunity to introduce evidence [of good behavior in prison]; it is also the elemental due process requirement that a defendant not be sentenced to death 'on the basis of information which he had no opportunity to deny or explain.'" *Id*. (quoting *Gardner v. Florida*, 430 U.S. 349, 362 (1977)).

Despite these holdings of the Supreme Court, the trial court in this case refused to allow Davis to present witnesses who would have testified as to his adaptation to death row, even over the

state prosecutor's suggestion that such evidence should be considered admissible.[3]  The state intermediate appellate court concluded, however, that the trial court "committed no *Lockett* error," because "the appellant was permitted to introduce ample evidence in mitigation at the *original* sentencing hearing, including evidence of his good behavior in prison." *Davis III*, 1990 WL 165137, at **2 (emphasis added).  The Ohio Supreme Court affirmed, interpreting *Skipper* to forbid the exclusion only of a defendant's good prison record *between his arrest and trial*, and holding that *Skipper* has no applicability to *post-trial* prison behavior.  *See Davis IV*, 584 N.E.2d at 1195.  The court observed:

> In the case at bar, no relevant mitigating evidence was excluded from consideration by the panel during the mitigation phase of appellant's 1984 trial.  All mitigating evidence which was available at that time was duly received and considered by the panel including evidence concerning appellant's ability to adjust to prison life.  That same relevant evidence was again received and considered by the panel in 1989 for purposes of resentencing appellant.  The evidence excluded from consideration by the panel at appellant's resentencing hearing concerned certain *post-trial* matters.  Under these circumstances, we do not believe that *Skipper* or, for that matter, *Lockett*, *Eddings*, or *Hitchcock* requires that appellant's death sentence be vacated.

*Id.* (internal citations omitted).  In dissent, one justice argued, however, that the directives of *Lockett* and its progeny should be considered "just as important in resentencing as they are in the original sentencing," and noted that they "are consistent with the directive in R.C. 2929.04(c) that a defendant 'be given great latitude' in presenting evidence of mitigating factors."  *Id.* at 1199 (Wright, J., dissenting).

We conclude that the decision of the state courts to disallow the proffered evidence was "contrary to" United States Supreme Court decisions on this issue and, therefore, that it runs afoul of *Williams*.  *See* 529 U.S. at 413.  Although neither side was permitted to introduce additional evidence at Davis's resentencing, the state used this opportunity to argue that Davis's status as a repeat offender rendered him too dangerous for anything other than a death sentence:

> To outweigh means to be more important than.  And when you come right down to it, the issue in this case is the answer to this question.  Is anything you heard in this case . . . in the defendant's mitigation evidence, is there anything more important in this case than the fact that Von Clark Davis is a repeat offender? I submit it's the most important thing in this defendant's history, character or background . . . that your Honors can consider . . . .  The aggravating circumstances in this case, repeat killing, recognizes a special danger demonstrated by an individual who purposely and repeatedly kills another, purposely and repeatedly disregards the safety, personal integrity and human worth of others.

Then, addressing Davis's exemplary prison record, the prosecution continued:

> How much weight can we assign that positive prison record? . . .  Consider this, the same people who in 1981 looked at this evidence before this positive record, the parole board, made a prediction in 1981 that Von Clark Davis was, and I quote the record, "a minimal risk to persons and property." How wrong they were in December

---

[3] The prosecution did not object to the presentation of these witnesses. At the motions hearing held July 31, 1989, the prosecutor discussed the holding of *Skipper* and then stated, "Looking at these cases . . . it's my considered judgment . . . that perhaps the ruling of this court should be in partial agreement with the defense, that they should be allowed to present evidence . . . limit[ed] to evidence that was not available at the time of the first hearing, that is, the evidence such as good behavior."

of 1983 in the situation of Suzette Butler. And coupled with [the fact that] the defendant has an explosive personality disorder, *it's hard to say that this defendant is not too dangerous, that we can predict that he's not too dangerous.* (Emphasis added.)

In rebuttal, Davis was then forced to rely solely upon the evidence presented at his first sentencing hearing, consisting of testimony from Bohlen, the probation officer who had prepared the presentence report based on records compiled during Davis's previous stay at the London Correctional Institution. Those records indicated that Davis's functioning in the prison was "very good" and that he had generally adapted well. Davis was prevented, however, from presenting the testimony of three employees of the Department of Corrections who could have offered relevant information about Davis's more recent behavior and adjustment to prison life since his incarceration after his trial in 1984.

Such testimony would have established that Davis was classified as an "A" prisoner, indicating that he had no discipline or conduct problems; that he was the clerk on death row for the unit manager and helped conduct tours of death row; and that he had created no problems for other inmates or for security personnel and had no conduct write-ups. Davis worked directly for Oscar McGraw, the unit manager for death row, who complimented Davis's positive attitude and pleasant personality. Herb Wendler, Davis's case manager, observed that Davis was cooperative and courteous, that he had been given much more freedom than other inmates on death row, and that he had been placed in various positions of trust within the unit.

Although there could conceivably be some question about the relevance of such evidence in the abstract, the record in this case establishes without doubt that it was highly relevant to the single aggravating factor relied upon by the state – that future dangerousness should keep Davis on death row. As the Supreme Court observed in *Eddings*, in such a situation "[t]he sentencer[s] . . . may determine the weight to be given [the] relevant mitigating evidence," but "may not give it no weight by excluding such evidence from their consideration." *Eddings*, 455 U.S. at 114-15. In light of the clear constitutional mandate of the Supreme Court at the time of Davis's resentencing, we have no choice but to conclude that the Ohio Supreme Court's decision to exclude the proffered testimony, based on the court's belief that the facts of Davis's case could be distinguished from *Skipper*'s solely on the basis of timing, was both an unreasonable application of the decision in *Skipper* and contrary to the holding in that opinion and its antecedent cases.

We are further persuaded of the correctness of our conclusion based on its ratification by the United States Supreme Court's recent opinion in *Ayers v. Belmontes*, 127 S.Ct. 469 (2006). In that case, the Court unmistakably recognized yet again the importance of permitting capital defendants to put forth evidence of the likelihood of future good conduct at sentencing. The *Ayers* majority stated:

> [J]ust as precrime background and character and postcrime rehabilitation may "extenuat[e] the gravity of the crime," so may some likelihood of future good conduct count as a circumstance tending to make a defendant less deserving of the death penalty. Cf. *Skipper*, 476 U.S., at 4-5 (explaining that while inferences regarding future conduct do not "relate specifically to [a defendant's] culpability for the crime he committed," those inferences are "'mitigating' in the sense that they might serve 'as a basis for a sentence less than death.'").

*Id.* at 475 (citations omitted).

Moreover, we are not alone among our sister circuits in recognizing that the holding in *Skipper* that a defendant be "permitted to present any and all relevant mitigating evidence that is

available," *Skipper*, 476 U.S. at 8, requires that, at resentencing, a trial court must consider any new evidence that the defendant has developed since the initial sentencing hearing. *See*, *e.g.*, *Robinson v. Moore*, 300 F.3d 1320, 1345-48 (11th Cir. 2002) (counsel is obliged to present newly available evidence at resentencing, although failure to do so in that case was not prejudicial); *Smith v. Stewart*, 189 F.3d 1004, 1008-14 (9th Cir. 1999) (failure to investigate and present additional evidence at resentencing constitutes ineffective assistance of counsel); *Spaziano v. Singletary*, 36 F.3d 1028, 1032-35 (11th Cir. 1994) (*Lockett* requires trial court to consider any new evidence that the parties may present at a resentencing hearing); *Alderman v. Zant*, 22 F.3d 1541, 1556-57 (11th Cir. 1994) (at resentencing hearing, trial court must consider reliable evidence of relevant developments occurring after defendant's initial death sentence). Most significantly, in a case with facts virtually indistinguishable from those in Davis's case, the Ninth Circuit held that *Lockett*, *Eddings*, and *Skipper* dictate that evidence of a defendant's good behavior and peaceful adjustment while in prison following imposition of the death sentence is indeed mitigating evidence that should be considered at a resentencing hearing. *See Creech v. Arave*, 947 F.2d 873, 881-82 (9th Cir. 1991).

There remains for our resolution the question of a remedy for the rejection of the new evidence that the petitioner sought to introduce before the three-judge panel. The respondent cites precedent to support the proposition that if a sentencer *considers* improper *aggravating* circumstances, the state appellate court may reweigh the remaining aggravating circumstances against the mitigating circumstances or may determine that the error was harmless. *See Parker v. Dugger*, 498 U.S. 308, 319 (1991); *Clemons v. Mississippi*, 494 U.S. 738, 745-50 (1990). Presumably, the warden, by citing these cases, contends that any constitutional error committed in this matter may be rectified simply by a state court reconsideration of Davis's suitability for execution or for lifetime incarceration. But, reweighing in this case is not possible because the improperly-excluded evidence was never put into the record. Defense counsel's proffer concerning the proposed witnesses' testimony merely summarized his interviews with these witnesses; the actual substance of the witnesses' testimony was not put before any court and, therefore, no factual basis for reweighing exists. For this reason, the Supreme Court has decided that, when a trial court improperly excludes *mitigating* evidence or limits the fact-finder's consideration of such evidence, the case must be remanded for a new sentencing hearing. *See Skipper*, 476 U.S. at 8.

The *Skipper* error in this case is both indisputable and dispositive. Because we must remand the case for yet another sentencing hearing, we need not address in detail each of the remaining allegations of constitutional error raised before this court by Davis. We will, however, discuss those issues insofar as they should also have affected the outcome in the state litigation or may arise again on remand to the state court.

## 2. Validity of the Appellate Review

The petitioner contends that in affirming both the three-judge panel's imposition and its reimposition of the death penalty, the Ohio appellate courts ran afoul of the United States Supreme Court's ruling in *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980), that a defendant's right to due process is violated when state courts "arbitrarily disregard" provisions of state criminal statutes. Specifically, Davis argues that the then-applicable provisions of Ohio Rev. Code § 2929.06 forbade a trial court from reimposing the death penalty upon resentencing after concluding that a non-statutory aggravating circumstance has been improperly considered by the sentencer.[4]

---

[4] Pursuant to the version of Ohio Rev. Code § 2929.06 in effect at the time of Davis's resentencing:

> If the sentence of death that is imposed upon any offender is vacated upon appeal because the court of appeals or the supreme court, in cases in which the supreme court reviews the sentence upon appeal, could not affirm the sentence of death under the standards imposed by section 2929.05 of the Revised Code, is vacated

We note that the petitioner's *Hicks* claim was not raised in the district court, was not included in the certificate of appealability and, therefore, is not properly before us. In anticipation of a similar argument being raised on remand, however, we note that the *state* courts of Ohio have construed the *state* statute at issue to apply only when a *jury*, not a three-judge panel, recommends a sentence of death. *See Davis II*, 528 N.E.2d at 936. Such an interpretation does not "arbitrarily disregard" state criminal statutes; indeed, that conclusion flows from the determination of the Ohio Supreme Court in *Penix* that, pursuant to Ohio statutory mandates, *"when an accused is tried by jury*, . . . a death sentence may be imposed by the trial judge only upon recommendation of the same jury that tried the guilt phase of the proceedings. . . ."  513 N.E.2d at 748 (emphasis added). Because Davis was tried initially by a three-judge panel, not by a jury, the restrictive resentencing provisions of Ohio Rev. Code § 2929.06 are not applicable in this matter. It thus follows that the sentencing process in this case did not violate due process under *Hicks*, that the sentencing court was not precluded from re-imposing the death penalty, and that there is no constitutional impediment to consideration of the death penalty upon remand for resentencing.

### 3. Withdrawal of the Jury Waiver

Following remand from the Ohio Supreme Court for a new sentencing hearing, Davis filed a motion to withdraw his waiver of the right to have his sentence determined by a jury, rather than by the three-judge panel that originally heard his case and imposed the death sentence, arguing that the original waiver had not been voluntarily, knowingly, and intelligently entered. The trial court denied the motion and, as noted above, again sentenced Davis to be executed.

Challenging the failure to permit withdrawal of his waiver of the right to be tried by a jury, Davis first contends that the waiver was not voluntary because the trial court's denial of his motion to sever the charges in the indictment forced him to seek a non-jury trial. Of course, this argument can succeed only to the extent that the court's decision to deny severance was in error and also constituted a violation of due process. Davis also contends that his jury trial waiver was not "knowing and intelligent" because, at the time the waiver was executed, he did not know and could not anticipate that the Ohio Supreme Court would subsequently hold that a capital defendant whose sentence was set aside following a *jury verdict* was ineligible for reimposition of the death penalty on remand for resentencing, *see Penix*, 513 N.E.2d at 745, but that *Penix* would not control situations involving sentencing and resentencing by three-judge panels. *See Davis II*, 528 N.E.2d at 936. The petitioner claims that this drastic difference in potential penalties upon resentencing violated his constitutional right to equal protection of the law.

### a. The Motion to Sever

The indictment against Davis contained two counts: aggravated murder, in violation of Ohio Rev. Code § 2903.01(A); and possession of a weapon while under a disability, in violation of Ohio Rev. Code § 2923.13(A)(2). Davis's prior conviction for the stabbing and second-degree murder of his first wife was specified in Count 1 to support an aggravating circumstance defined in § 2929.04(A)(5), which was a necessary element to make the alleged murder of Suzette Butler a capital offense. Another prior conviction, this one for shooting at his first wife with a firearm with

---

upon appeal for the sole reason that the statutory procedure for imposing the sentence of death that is set forth in sections 2929.03 and 2929.04 of the Revised Code is unconstitutional, or is vacated pursuant to division (C) of section 2929.05 of the Revised Code, the trial court that sentenced the offender shall conduct a hearing to resentence the offender. At the resentencing hearing, the court shall sentence the offender to life imprisonment with parole eligibility after serving twenty full years of imprisonment or to life imprisonment with parole eligibility after serving thirty full years of imprisonment.

the intent to murder her, was likewise specified in the indictment, but only in support of the weapons charge in Count 2.

Prior to trial, Davis filed a motion to sever these two counts, alleging that he would be prejudiced by joinder of the offenses. Specifically, Davis argued that if the two counts were tried together, the jury would hear evidence concerning his prior homicide conviction, which would be admissible solely to prove under Count 2 that he could not legally possess a firearm, thereby creating a risk that the jury would improperly consider that prior act in deciding his guilt on the aggravated murder charge in Count 1.[5] Davis also argued that the provisions of Ohio Rev. Code § 2929.022(A) supported his position that the Ohio legislature intended to provide special protection for capital defendants against the improper consideration of prior bad acts.

When the trial court denied his motion for severance, Davis waived his right to a jury trial and elected to proceed instead before a three-judge panel. On appeal, the Ohio Court of Appeals found that the two counts had been properly joined in the indictment pursuant to Ohio Rule of Criminal Procedure (8)(A), and that petitioner had not met his burden of affirmatively demonstrating prejudice by the joinder. *See Davis I*, 1986 WL 5989, at **7-8. The appeals court also rejected the petitioner's argument that § 2929.022(A) permitted the defendant to bar all evidence concerning a prior purposeful killing that would be admissible at trial for reasons other than to prove the aggravating circumstance. *See id.* at *8. The Ohio Supreme Court affirmed, agreeing that the offenses had been properly joined under Rule 8(A), which permits joinder of separate offenses only where the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." The court found that "[c]learly . . . the crimes charged in the indictment arose from the same act or transaction." *Davis II*, 528 N.E.2d at 928. The court also ruled that § 2929.022(A) did not trump Rule (8)(A) to mandate severance. "[I]t is not the purpose of R.C. 2929.022(A) to provide a defendant with a blanket statutory right to preclude, at the guilt phase, the introduction of all evidence pertaining to prior purposeful killings which is otherwise admissible, *i.e.*, the evidence necessary to prove the offense of having a weapon while under a disability." *Id.* at 929.

In denying Davis's motion for severance, the Ohio courts applied state law and, as a result, we must accept as binding the state supreme court's interpretation of the interaction between the capital specification-election provision, Ohio Rev. Code § 2929.022(A), and the rules for joinder and severance of criminal charges. In considering whether the denial of severance amounted to an error warranting relief in a habeas proceeding, the issue before us is not whether the failure to sever counts for separate trials was a violation of a state rule of procedure, but whether the failure to sever denied the petitioner due process of law under the Fourteenth Amendment. *See Corbett v. Bordenkircher*, 615 F.2d 722, 724 (6th Cir. 1980). In other words, in order to obtain federal habeas relief on this claim involving state law, Davis must show that misjoinder of the counts "result[ed] in prejudice so great as to deny a defendant his . . . right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986).

Without question, a risk of undue prejudice exists whenever joinder of counts permits introduction of evidence of other crimes that would otherwise be inadmissible. *See*, *e.g.*, *Bean v. Calderon*, 163 F.3d 1073, 1084 (9th Cir. 1998). By allowing joinder of offenses, the possibility exists that a jury may use the evidence of one of the charged crimes to infer a general criminal disposition by the defendant; the jury also may confuse or cumulate the evidence of the various

---

[5] Because Ohio Rev. Code § 2929.022(A) permits a capital defendant charged with a prior conviction specification under § 2929.04(A)(5) to have *the trial judge* determine the existence of the aggravating circumstance *at the sentencing hearing*, rather than submit that issue to the jury, severance of the two counts would have allowed Davis to keep evidence of the second-degree murder conviction from the jurors until the sentencing phase of the proceedings.

crimes charges. *See Lucero v. Kerby*, 133 F.3d 1299, 1314 (10th Cir. 1998). The prejudice that Davis must demonstrate, however, in order to justify a grant of a writ of habeas corpus is *actual* prejudice, not merely the *potential* for prejudice. *See Herring v. Meachum*, 11 F.3d 374, 377-78 (2d Cir. 1993).

After examining settled case law, we conclude in this case that the fact that a jury had learned of Davis's prior felony conviction did not result in an unfair trial as a matter of law. For example, in *Spencer v. Texas*, 385 U.S. 554 (1967) (reaffirmed by *Marshall v. Lonberger*, 459 U.S. 422 (1983)), the Supreme Court considered the constitutionality of a Texas recidivist statute under which the jury trying the pending criminal charge was informed of a defendant's prior convictions during the guilt phase. The trial court instructed the jury that these prior convictions were to be considered for sentencing purposes only, and could not be taken into account in determining guilt on the pending charge. The Court recognized that evidence of a prior conviction might be admitted, among other reasons, to prove an element of the indicted offense. *See id.* at 560. Nevertheless, in such a situation, "the jury learns of prior crimes committed by the defendant, but the conceded possibility of prejudice is believed to be outweighed by the validity of the State's purpose in permitting introduction of the evidence." *Id.* at 561. The Court concluded that the prejudice suffered by a defendant in such a case does not rise to the level of a violation of due process:

> To say the United States Constitution is infringed simply because this type of evidence may be prejudicial and limiting instructions inadequate to vitiate prejudicial effects, would make inroads into this entire complex code of state criminal evidentiary law, and would threaten other large areas of trial jurisprudence. . . . This type of prejudicial effect is acknowledged to inhere in criminal practice, but it is justified on the grounds that (1) the jury is expected to follow instructions in limiting this evidence to its proper function, and (2) the convenience of trying different crimes against the same person . . . in the same trial is a valid governmental interest.

*Id.* at 562. The Court noted that the defendant's interests are also protected by the discretion of the trial court to limit or forbid the admission of particularly prejudicial evidence. *See id.* Furthermore, courts have observed that where documentary evidence is used, as it is in Ohio,[6] to prove the prior crime, such evidence is seldom, if ever, so inflammatory that the jury will be unable to follow instructions to disregard any inclination to convict a defendant based upon conduct committed in a past criminal episode. *See Bruton v. United States*, 391 U.S. 123, 135 (1968).

Left to our own devices, we might well remain skeptical, despite the wealth of settled law, about the degree to which Ohio's joinder provisions undercut the protection afforded a capital defendant by Ohio Revised Code § 2929.022(A), especially given the heightened concerns regarding undue prejudice in a capital case. Nevertheless, a habeas corpus proceeding is not an appropriate vehicle for this court to substitute its own judgment for that of the State of Ohio. "[A] state rule of law does not run afoul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at bar." *Spencer*, 385 U.S. at 564 (internal quotation marks and citation omitted). Because the denial of Davis's motion for severance did not constitute a denial of the petitioner's due process right to a fair trial, that ruling cannot be said to have rendered his waiver of a jury trial involuntary.

---

[6] Ohio Rev. Code § 2945.75(B) provides that, whenever the prosecution must prove the existence of a prior conviction, it is sufficient to provide a certified copy of the entry of judgment for the prior conviction, accompanied by evidence to identify the named defendant as the offender in the present case. *See State v. Blonski*, 707 N.E.2d 1168, 1172 (Ohio Ct. App. 1997); *State v. Day*, 651 N.E.2d 52, 54 (Ohio Ct. App. 1994). Although the state must introduce evidence that the individual named in the proffered judgment entry is in fact the defendant then on trial, it must do so in a manner that does not allow the jury to hear details of the prior conviction. *See Blonski*, 707 N.E.2d at 1172.

**b. The *Penix–Davis* Dichotomy**

On remand from the Ohio Supreme Court for resentencing, the petitioner also moved to withdraw his jury waiver on the ground that it was not knowing and intelligent because he did not anticipate the Ohio Supreme Court's decision in *Penix*, which was decided while Davis's case was still on direct appeal. The court held in *Penix* that a capital defendant who is sentenced by a jury in the first instance becomes ineligible for the death penalty following reversal of that sentence. *See* 513 N.E.2d at 748.[7] Davis now argues in effect that he should have been allowed to withdraw his jury waiver prior to resentencing because reimposition of the death sentence by the three-judge panel was a violation of his right to equal protection of the laws, given that a defendant originally sentenced to death by a jury would not have been eligible for imposition of the same sentence on remand.

In *Davis IV*, 584 N.E.2d at 1196, the Ohio Supreme Court addressed this claim as follows:

> In his fifth proposition of law, appellant challenges the constitutionality of our holding in *Davis [II]*, *supra*, which permitted the three-judge panel to consider reimposing the death penalty on remand. Appellant argues that our holding in *Davis [II]* is unconstitutional since a defendant whose death sentence is vacated following a jury trial would not similarly be subject to the death penalty upon sentencing remand. *See State v. Penix*, . . . 513 N.E.2d 744 [(1987)]. In effect, appellant requests that we reconsider our holding in *Davis [II]* in which we distinguished *Penix*. However, we decline appellant's invitation, at this time, to revisit our basic holding in *Davis [II]*.

As an initial matter, we note that this ruling is not a decision on the merits and, therefore, that the AEDPA standard of review set out in § 2254 does not apply to this claim. *See Newton v. Million*, 349 F.3d 873, 878 (6th Cir. 2003). When the state courts do not assess the merits of a petitioner's claims, the federal habeas court need not extend the deference otherwise due under AEDPA. *See id.* Instead, the habeas court reviews *de novo* questions of law and mixed questions of law and fact. *See id.*

When a law seeks to regulate an individual's fundamental rights or distinguishes between individuals on the basis of certain suspect characteristics, the statute is subject to strict scrutiny under the Equal Protection Clause. *See Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 (1976). Davis clearly does not belong to a "suspect class" for equal protection purposes, however. Federal courts have consistently held that prisoners do not constitute such a class, *see Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000), nor do capital defendants. *See Tigner v. Cockrell*, 264 F.3d 521, 526 (5th Cir. 2001); *Pitsonbarger v. Bramley*, 141 F.3d. 728, 739 (7th Cir. 1998).

Nor has Davis's fundamental right to have his punishment determined by a jury yet been implicated in this matter. In the United States Supreme Court's opinion in *Ring v. Arizona*, 536 U.S. 584, 602 (2002), the Court did recognize that Sixth Amendment jurisprudence now requires that *a jury* find, beyond a reasonable doubt, any fact necessary to increase a defendant's authorized punishment.[8] *Ring*, however, post-dates not only the petitioner's sentencing and resentencing, but

---

[7] The Ohio legislature subsequently amended Ohio Rev. Code § 2929.06 to provide for reimposition of the death penalty in cases tried to a jury after the effective date of the amendment. *See* Ohio Rev. Code § 2929.06(B).

[8] Obviously, *Ring*'s mandates would apply only in situations in which the criminal defendant did not exercise the prerogative to waive the constitutional right to a jury trial. *See*, *e.g.*, *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995) ("Any right, even a constitutional right, may be surrendered . . . if that waiver was made knowingly and voluntarily.").

also the denial of habeas relief by the district court. Consequently, the state courts cannot be faulted for failing to analyze Davis's motion to withdraw his jury waiver under a fundamental-rights-analysis when the right in question had yet to be recognized by the Supreme Court in the context raised by the petitioner.

Furthermore, the decisions of the Ohio state courts in refusing to grant the petitioner's withdrawal motion cannot be successfully attacked as violating the rational basis prong of an equal protection analysis. In order to succeed in such a challenge, Davis must demonstrate that there is no conceivable basis sufficient to sustain the statute, "even if there is no indication that the suggested rationale actually motivated the legislature in enacting it." *Innes v. Howell Corp.*, 76 F.3d 702, 708 (6th Cir. 1996). In denying Davis the habeas corpus relief he sought, the district judge noted that a sound, rational basis did indeed exist in this case for the different treatment of defendants resentenced after jury trials and those resentenced after trials before three-judge panels. According to the district court, "[t]here are obvious difficulties presented in trying to reassemble the original trial jury to participate in a resentencing hearing." By contrast, "the three judges who comprised the original panel in the petitioner's case were still available to resentence the petitioner." Because such a distinction is arguably rational, we must conclude that Davis's equal protection challenge to the original denial of his motion to withdraw his jury waiver is without merit.

## C. *Procedure on Remand to State Court*

Nevertheless, we anticipate that Davis's counsel will renew his motion to withdraw the jury waiver upon remand to the state trial court for the new sentencing hearing necessitated by our finding of *Skipper* error. We note that under Ohio Revised Code § 2945.05, a waiver of jury trial "may be withdrawn by the defendant at any time before the commencement of trial." Granted, the resentencing hearing that we order today will not constitute a "trial" in the sense that the petitioner's guilt or innocence is again at issue. However, in this case, the proceeding can indeed be considered the functional equivalent of "trial" because, unlike sentencing in a non-capital case, it will take the form of an evidentiary proceeding on the question of whether Davis should receive the death penalty or some form of a life sentence.

Moreover, we think there is a legitimate question as to whether a criminal defendant should be held to a jury waiver entered almost 25 years before his newly-mandated sentencing hearing. In the Sixth Circuit, at least, we have recognized that a defendant's jury waiver entered prior to the first trial of his case does not bar his right to a jury trial on the same case after remand from a reviewing court. *See*, *e.g.*, *United States v. Groth*, 682 F.2d 578, 580 (6th Cir. 1982) ("waiver of a jury trial does not bar a demand for a jury on retrial of the same case unless the original waiver explicitly covers this contingency"); *United States v. Lee*, 539 F.2d 606, 608 (6th Cir. 1976) ("when a reviewing court finds error in the conduct of a trial and reverses with directions for a new trial . . . the general rule is that a litigant is not bound by his prior waiver of a jury trial . . . [u]nless the language of a waiver unambiguously states that it will apply in all retrials should they be ordered"). *Accord Sinistaj v. Burt*, 66 F.3d 804, 808 (6th Cir. 1995) (rule in *Groth* inapplicable when no event such as reversal and remand for a new trial intervenes between the waiver and the attempted withdrawal). Likewise, the Ohio courts have held, in reversing a conviction "on the basis that [the defendant] was neither charged nor found guilty of an essential element of the offense," that the defendant's "previous waiver of a jury trial is also inherently revoked by the reversal of the conviction and the [amended] indictment." *State v. McGee*, 715 N.E.2d 1175, 1178 (Ohio Ct. App. 1998). That conclusion was based on the fact that on remand, additional evidence would be introduced from both the prosecution and the defense, as is likely to occur on remand of this case. While not directly on point, because Davis is not facing a new indictment, the reasoning of the Ohio court in *McGee* should certainly inform the sentencing court's determination of the viability of Davis's jury waiver on remand.

### III. *CONCLUSION*

Several other issues raised on appeal have been procedurally defaulted or have been rendered moot by the necessity of the *Skipper* remand. These include the claim that the trial court erred in denying the motion for additional expert witnesses at resentencing, a motion that can, of course, be renewed at the new sentencing hearing if determined necessary by counsel. The claim of bias raised against two of the three judges on the trial court panel is without merit, as the district court concluded, but also unlikely to arise on remand given the probability that the same three-judge panel cannot be reconstituted after such a lengthy period of time. The claim of error concerning the separation of those three judges during deliberations is now moot, but also a matter of state law that is not reviewable under 28 U.S.C. § 2254. Finally, the constitutional challenge to Ohio Rev. Code § 2929.03(D)(1) appears to have been procedurally defaulted and cannot be excused on the basis of ineffective assistance of counsel, because the petitioner has not established prejudice resulting from the trial court's ruling under that section of the state capital sentencing statute.

Based on the prejudicial *Skipper* error in denying the petitioner the right to present additional evidence at his resentencing hearing, we REVERSE the judgment of the district court denying habeas relief and REMAND the case for the issuance of a conditional writ under 28 U.S.C. § 2254.

---

**CONCURRENCE**

---

JULIA SMITH GIBBONS, Circuit Judge, concurring. I agree with the majority's conclusion that we must remand this case for the issuance of a conditional writ under 28 U.S.C. § 2254 but disagree with the opinion's basis for this decision under *Lockett*, *Eddings*, and *Skipper*.

Applying the standard of review required by AEDPA, I am unable to conclude that the decision of the Ohio Supreme Court was either "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). *Lockett* and *Eddings* hold that a sentencer must consider all relevant mitigating evidence. *See Lockett*, 438 U.S. at 604; *Eddings*, 455 U.S. at 113-14. *Skipper* holds that post-sentence prison behavior is relevant mitigating evidence. *See Skipper*, 476 U.S. at 5. Therefore, the majority concludes that the three-judge panel must consider Davis's post-sentence prison behavior at resentencing. (Op. 9.) I agree with the majority that Davis's post-sentence prison behavior and psychological profile are relevant mitigating evidence that must have been admitted in the original sentencing hearing, had the evidence existed at the time. *See Skipper*, 476 U.S. at 7. However, the issue in this case is whether the presentation of evidence of mitigating and aggravating factors must be reopened when a death sentence is reversed for a reason unrelated to the presentation of evidence. None of the Supreme Court cases cited by the majority supports this premise. *See Ayers*, 127 S. Ct. at 474-75 (holding that jury instruction did not preclude jury from considering mitigating evidence at trial); *Skipper*, 476 U.S. at 3-5 (holding that court erred by excluding relevant mitigating evidence from trial); *Eddings*, 455 U.S. at 113-14 (holding that court erred by excluding relevant mitigating evidence from trial); *Lockett*, 438 U.S. at 606 (holding that statute unconstitutionally excluded relevant mitigating evidence from trial). In each of these cases, the error allegedly committed was the exclusion of evidence, and the only appropriate remedy was the admission of new evidence.

Furthermore, all but one of the cases cited by the majority from other circuits are factually distinguishable. *See Robinson*, 300 F.3d at 1345-48 (holding that defendant was not prejudiced by his counsel's failure to introduce mitigating evidence at resentencing); *Smith*, 189 F.3d 1008-14 (holding that defendant's counsel was ineffective for failing to introduce mitigating evidence at resentencing); *Spaziano*, 36 F.3d at 1032-35 (noting that trial court was required to consider any mitigating evidence actually presented at resentencing); *Alderman*, 22 F.3d at 1556-57 (holding that, despite *Lockett*, court could exclude evidence at resentencing that lacked assurances of trustworthiness). It is clear from these cases that when presentation of evidence has been reopened at a resentencing hearing, all relevant mitigating evidence must be considered. However, none of these cases stand for the proposition advanced by the majority that a trial court must reopen the presentation of evidence. (Op. 11.) *Creech* is the only case cited by the majority that actually is on point. In *Creech*, after the defendant's sentence was vacated by the Idaho Supreme Court on the ground that the trial judge failed to pronounce the sentence in the presence of the defendant as required by Idaho law, the trial judge simply read the sentence to the defendant on remand. *Creech*, 947 F.3d at 881. On appeal of the defendant's *habeas* petition, the Ninth Circuit held that the presentation of evidence must be reopened for presentation of any and all mitigating evidence that exists at the time of the hearing. *Id*. at 881-82. Although I agree with the majority that the facts of *Creech* are "virtually indistinguishable," the standard of review is not. *Creech* was decided before AEDPA came into effect, and the court applied *de novo* review. *Id*. at 876.

This court may not grant the writ unless the decision of the Ohio Supreme Court was either "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As the Supreme

Court cases are not factually analogous and *Creech* is not a Supreme Court decision, I cannot conclude that the decision of the Ohio Supreme Court was unreasonable.

I concur with the majority's judgment that Davis must be resentenced, however, because he was denied due process when his "death sentence was imposed, at least in part, on the basis of information which he had no opportunity to deny or explain." *Gardner*, 430 U.S. at 362. Although the majority implies that this right somehow "triggers" the requirement of *Lockett* and *Eddings* that a sentencer consider all mitigating evidence, (Op. 8), this due process requirement actually provided an alternative, unanimous basis for the Supreme Court's judgment in *Skipper, see Skipper*, 476 U.S. at 5 n.1 ("[I]t is not only the rule of *Lockett* and *Eddings* . . . ; it is also [an] elemental due process requirement . . . ."); *id.* at 9 (Powell, J., concurring) ("[The] result is not required by our decisions in *Lockett* and *Eddings* . . . but because petitioner was not allowed to rebut evidence and argument used against him." (citing *Gardner*, 430 U.S. at 349)) (internal citations omitted). As the majority correctly notes, just as in *Skipper*, Davis was denied the opportunity to introduce evidence rebutting the prosecutor's argument that the he was too dangerous for a sentence of life in prison. (Op. 9-10.) Although Davis's mere resentencing does not justify the reopening of evidence, when the prosecutor used the resentencing to argue that the judges should discount Davis's previous exemplary prison record, he triggered Davis's due process rights under *Gardner* to present rebuttal evidence.

After concluding that the case must be resentenced, I would refrain from expressing any opinion as to the other, now-moot issues raised by Davis. In particular, I would avoid suggesting to the Ohio courts an approach to the jury waiver issue, as the majority opinion does after concluding that there is no basis for federal relief on that issue.

For the foregoing reasons, I concur in the judgment.