*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0277p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————————

DENNIS B. MCGUIRE,

        *Petitioner-Appellant,*

    *v.*

STATE OF OHIO; BETTY MITCHELL, Warden,

        *Respondents-Appellees.*

No. 07-3991

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 99-00140—Susan J. Dlott, Chief District Judge.

Argued: August 3, 2010

Decided and Filed: August 31, 2010

Before: SILER, ROGERS, and SUTTON, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Gary W. Crim, Dayton, Ohio, for Appellant. Seth P. Kestner, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Gary W. Crim, Dayton, Ohio, Linda E. Prucha, OFFICE OF THE OHIO PUBLIC DEFENDER, Columbus, Ohio, for Appellant. Seth P. Kestner, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

———————————

## OPINION

———————————

    ROGERS, Circuit Judge. Capital habeas petitioner Dennis B. McGuire challenges the Supreme Court of Ohio's conclusions that (1) the trial court properly excluded certain hearsay by the victim's husband, (2) appellate counsel was not ineffective in failing to challenge the omission of a catch-all mitigation factor from the

1

jury instructions, and (3) sufficient evidence supports the jury's guilty verdict for rape. The district court properly rejected each of these arguments and denied habeas relief.

McGuire was convicted of the kidnapping, rape and aggravated murder of Joy Stewart, and he was sentenced to death. *McGuire v. State*, 686 N.E.2d 1112, 1114 (Ohio 1997). On the last day she was seen alive, Joy Stewart visited Juanita Deaton, whose son had hired McGuire to clean the gutters of the Deatons' house. *Id.* Mrs. Deaton saw Joy Stewart talking to two men outside the house, and testified that McGuire and Joy Stewart left the home at about the same time. *Id.* McGuire's brother-in-law, Jerry Richardson, testified that while McGuire was at Richardson's house later that afternoon, Joy Stewart arrived and requested marijuana. *Id.* at 1114-15. McGuire agreed to get marijuana for her, and she left with him in his car. *Id.* at 1115. Hikers found Joy Stewart's body the next day. *Id.* The Supreme Court of Ohio described the physical evidence and related testimony:

> The front of [Joy Stewart's] shirt was saturated with blood. One deputy sheriff at the scene, Larry Swihart, also noted that there appeared to be a "blood wipe mark" on her right arm. The body was taken to the Montgomery County Coroner's Office, where an autopsy was performed. The autopsy revealed that [Joy Stewart] had been stabbed twice. One wound, located above the left collarbone, caused no significant injury. The critical wound was a four-and-a-half-inch-deep cut in the throat, which completely severed the carotid artery and jugular vein. The doctor determined that [Joy Stewart] was alive when she received the wound, and that such a wound could have been caused by a single-edged blade shorter than four and a half inches, due to "how soft and moveable the tissues are in the neck." The autopsy also revealed abrasions around the neck, impressed with the cloth pattern of [Joy Stewart's] shirt.
>
> The coroner's office also took vaginal, oral, and anal swabs. The coroner found an abundant amount of sperm on the anal swab, some sperm on the vaginal swab, and none on the oral swab. The coroner indicated that sperm could be detected in the vagina for days or sometimes weeks after ejaculation; however, sperm in the rectum could be detected for a lesser time "because the environment is fairly hostile for sperm, and . . . a bowel movement . . . usually will purge the rectum of any sperm."

*Id.*

When McGuire was later imprisoned on an unrelated offense, he discussed the killing with law enforcement officials:

> Joseph Goodwin, the corrections officer McGuire initially talked to, took [McGuire] to a private room to talk, where McGuire told him that he knew who had killed Joy Stewart. McGuire stated that Jerry Richardson, McGuire's brother-in-law, had killed [Joy Stewart] with a knife, and appellant could lead investigators to it. McGuire explained to Officer Goodwin that Richardson had wanted to have sex with [Joy Stewart], but she had refused. McGuire claimed that Richardson then pulled a knife on her, and forced her to have oral sex with him. McGuire then said Richardson anally sodomized her because he "couldn't have regular sex with her because she was pregnant." He also said Richardson stabbed her "in the shoulder bone" and "cut her throat."
>
> Based on these details, Goodwin contacted Investigator [David] Lindloff [who had investigated Joy Stewart's killing], who talked to McGuire on December 22, 1989. McGuire told Lindloff that Richardson committed the murder, that he stabbed [Joy Stewart] twice in the neck, and that "the first time it didn't go in. He pulled the knife back out and stuck her again." Lindloff was interested, since the fact that [Joy Stewart] had been stabbed twice in the neck and anally sodomized had not been revealed to the public at that time. [McGuire] also described in detail the area where [Joy Stewart's] body had been found.
>
> . . . .
>
> A subsequent audiotaped interview by Deputy Swihart elicited further details from McGuire. McGuire claimed that Richardson choked [Joy Stewart] before stabbing her and wiped his bloody hands off on her, both of which actions were consistent with the state of [Joy Stewart's] body at the crime scene. Again, Swihart felt that these details were significant, since they had never become a matter of public knowledge.

*Id.* McGuire told a friend that he and Richardson had committed a murder and he was planning to blame Richardson for the crime. *Id.* at 1116. Two of McGuire's fellow inmates also testified at trial:

> A fellow inmate at the Preble County Jail, Jack Stapleton, testified that he had overheard a conversation between McGuire and another inmate, in which McGuire claimed that he had seen his brother-in-law rape and murder [Joy Stewart]. However, at one point, McGuire apparently slipped and implicated himself when telling the story. While

describing the murder, Stapleton testified that McGuire "had his hand like this describing [*sic*], telling the guy how she was killed. And he said I–he goes I mean he. Stabbed her like this. Hit a bone. It didn't kill her. So he stabbed her again."

McGuire was later transferred to Madison Correctional Institute. An inmate there, Willie Reeves, testified that McGuire told him that while he was cleaning gutters, [Joy Stewart] showed up asking whether McGuire had any marijuana. McGuire offered to share some with her, and they left in his car. At one point McGuire asked whether she wanted to have sex, and she refused. McGuire then told Reeves he did it anyway. He then explained that because she was so pregnant, it was difficult to engage in sex with her, so instead he anally sodomized her. [Joy Stewart] then became "hysterical," which made McGuire nervous. He ended up killing [Joy Stewart] for fear that he would go to jail for raping a pregnant woman.

*Id.*

The coroner's office tested DNA samples collected from the swabs of Joy Stewart's body:

In June 1992, the Montgomery County Coroner's Office sent the vaginal, anal, and oral swabs collected from [Joy Stewart's] body, along with a cutting from her underpants, to Forensic Science Associates, a private laboratory, for DNA testing using the PCR technique. A forensic scientist there compared DNA extracted from the samples with blood samples taken from Dennis McGuire, Jerry Richardson, Joy Stewart, and Joy's husband, Kenny Stewart. The scientist determined that McGuire could not be eliminated as a source of the sperm. Kenny Stewart and Richardson, however, could be eliminated, unless there were two sperm sources, *e.g.,* multiple assailants. This was because the sperm analyzed contained a DQ Alpha type 3, 4, with a trace amount of DQ Alpha type 1.1, 2. McGuire's DNA was the DQ Alpha type 3, 4, whereas Richardson, Stewart, and the victim's DNA was the DQ Alpha type 1.1, 2. The forensic scientist testified that the trace amount of 1.1, 2 could have resulted either from [Joy Stewart's] epithelial cells taken in the swab, or from a secondary sperm source. The sperm DNA analyzed had characteristics that appear in about one in one hundred nineteen males in the white population.

*Id.* (footnote omitted). Over McGuire's objection, the trial court excluded from trial a statement by Kenny Stewart, Joy Stewart's husband, to law enforcement officials that

he had engaged in anal intercourse with Joy Stewart three or four days before the murder. *Id.* at 1120. Kenny Stewart committed suicide before the trial began, 4 J.A. 1462, 1477, and the trial court held that his statement was inadmissible hearsay, 686 N.E.2d at 1120. The jury found McGuire guilty of rape, kidnapping, and aggravated murder with the rape specification. *Id.* at 1114.

At sentencing, McGuire's family and a psychologist testified to McGuire's traumatic youth, childhood marijuana use, and school difficulties. The trial court instructed the jury to consider "all the relevant evidence" and stated that

> [Y]ou are going to proceed to weigh the aggravating circumstance which you have already found against the mitigating factors which you will consider and find.
> The aggravating circumstance which you have already found is as follows: The offense was committed while the Defendant was committing, or attempting to commit, or fleeing immediately after committing or attempting to commit rape and was the principal offender in the commission of the aggravated murder.
> Now, weighing against the aggravating circumstance will be the following mitigating factors:
> 1) Any residual or lingering doubts about the Defendant's guilt of the offense charged or an aggravating circumstance.
> 2) The Defendant's potential for rehabilitation.
> 3) The Defendant's ability to make a well-behaved and peaceful adjustment to life in prison.
> 4) The Defendant's ability to lead a useful life behind bars if sentenced to life imprisonment.
> 5) The Defendant's devotion to, and care of, his family members.
> 6) Whether the Defendant was the victim of childhood abuse.
> 7) The Defendant was deprived of parental nurturing.

6 J.A. 2324-25. McGuire's counsel requested an instruction to "advise the jury that they could come up with their own mitigating factor, based upon any of the evidence that was presented to them." 6 J.A. 2298. The trial court declined to give this catch-all instruction. The jury recommended a death sentence, and the trial court imposed that sentence.

Before the Court of Appeals of Ohio, McGuire challenged the exclusion of Kenny Stewart's statement and the sufficiency of the evidence, but he did not challenge

the trial court's omission of a catch-all mitigation factor from the jury instructions. The Court of Appeals affirmed McGuire's conviction. No. CA95-01-001, 1996 WL 174609 (Ohio Ct. App. Apr. 15, 1996). Before the Supreme Court of Ohio, McGuire challenged the exclusion of Kenny Stewart's statement and the sufficiency of the evidence, as well as the omission of the catch-all mitigation factor, and McGuire alleged that his appellate counsel was ineffective for failing to challenge that catch-all omission before the Court of Appeals of Ohio. The Supreme Court of Ohio denied McGuire's appeal and held that the hearsay statement was not admissible. 686 N.E.2d at 1120. The Supreme Court of Ohio also held that the trial court erred in not instructing the jury on a catch-all mitigation factor but that "[u]nder the circumstances of this case, reasonable appellate counsel could have decided that a history of marijuana use was of such little mitigation that the error in instructing the jury was harmless." *Id.* at 1119. The Supreme Court of Ohio also independently reweighed the aggravating circumstances and mitigating factors to determine whether the death sentence was appropriate. *Id.* at 1122-23. After noting that residual doubt was not a proper mitigating factor, the Supreme Court of Ohio continued to weigh the mitigating evidence presented:

> Doris Newton, McGuire's mother, and Tonya Cross, his half-sister, testified about McGuire's turbulent childhood. The defendant was born in 1960. His parents divorced two years later, leaving McGuire in the sole care of his mother. McGuire's father took his older brother away, and McGuire had little contact with them after that, except when he would run away from home to see them.
>
> McGuire lived with his mother until he was eighteen. During that time, his mother was involved with several men, some of who physically beat her in front of the appellant, who was required on occasion to run for help. His mother and half-sister testified that these men did not abuse the appellant physically; however, they did inflict mental abuse by calling McGuire names, yelling at him, and generally treating him poorly. Some of these men, however, were good to the defendant, and one continued to be available to help him even after the marriage with appellant's mother ended.
>
> Defendant was also moved frequently, attending various schools, but eventually dropping out after ninth grade. Defendant began using marijuana at the age of nine and continued doing so until his incarceration in 1990. While imprisoned, appellant has taken strides to

improve his education. He has also committed only minor infractions while incarcerated.

> Appellant has not demonstrated that the factors listed as mitigation outweigh the aggravated nature of the murder. While appellant's mitigation evidence is entitled to some weight, it is insufficient to overcome the aggravating circumstance in this case, that defendant committed rape in conjunction with murder. We therefore conclude under our independent review that the aggravating circumstances outweigh the mitigating factors in this case.

*Id.* at 1123. The Supreme Court of Ohio therefore affirmed McGuire's conviction and sentence. *Id.* at 1124.

After the Ohio courts denied McGuire post-conviction relief, No. CA97-06-015, 1998 WL 191415 (Ohio Ct. App. Apr. 20, 1998), McGuire petitioned for relief under 28 U.S.C. § 2254. McGuire challenged, inter alia, the exclusion of Kenny Stewart's statement, the omission of a catch-all mitigation factor instruction and appellate counsel's failure to challenge that omission, and the sufficiency of the evidence of rape. McGuire argued that his counsel's ineffectiveness in failing to raise the jury-instruction-omission claim before the Court of Appeals of Ohio excused procedural default of the underlying claim.

The district court held that excluding Kenny Stewart's statement was not an unreasonable application of *Chambers v. Mississippi*, 410 U.S. 284 (1973), because the statement was neither spontaneous, nor corroborated, nor inherently incriminating, and because Kenny Stewart was not available for cross examination. No. 3:99-CV-140, 2007 WL 1893902, at *10 (S.D. Ohio July 2, 2007) (Dist. Ct. Op.). The district court also held that, although omitting a catch-all mitigation factor from the jury instructions was error and McGuire's appellate counsel performed deficiently by failing to challenge the omission, it was unnecessary to determine whether McGuire suffered prejudice that would excuse his procedural default because the Supreme Court of Ohio's independent reweighing of the aggravating circumstances and mitigating factors "cured the trial court's error and obviated any prejudice caused thereby." *Id.* at *13. The district court finally held that sufficient evidence supported the jury's rape verdict because "McGuire

consistently referred to [Joy] Stewart being 'raped'" in discussions with Lindloff, Stapleton, and Reeves; "medical evidence [was] consistent with a finding of compulsion by force;" and "in view of the DNA evidence introduced at trial, it was not unreasonable for the jury to conclude that McGuire was the source of the semen collected from [Joy] Stewart's vagina and anus." *Id.* at *26-27. The district court denied habeas relief on these and other grounds raised by McGuire, and granted a certificate of appealability with respect to these three grounds. McGuire now appeals.

McGuire, however, is not entitled to habeas relief on any of the three claims. McGuire's petition is governed by the Anti-Terrorism and Effective Death Penalty Act, under which the federal courts may grant habeas relief to a state prisoner based on claims adjudicated on the merits in state court if the state-court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

First, the Supreme Court of Ohio did not unreasonably apply federal law when it held that McGuire suffered no constitutional violation when the trial court excluded Kenny Stewart's statement that he had engaged in anal intercourse with the victim, his wife Joy, in the days before her death. McGuire relies primarily on *Chambers v. Mississippi*, in which the Supreme Court held that the exclusion of a hearsay statement coupled with the trial court's refusal to permit cross-examination of the declarant on that statement violated the defendant's constitutional rights when the hearsay statement was corroborated by other evidence, "self-incriminatory and unquestionably against interest," and "made spontaneously to a close acquaintance shortly after the [crime]," and when the declarant was available for cross examination. 410 U.S. at 300-301. The district court carefully distinguished *Chambers*, and we adopt the district court's reasoning in that regard. Dist. Ct. Op. at *10. The excluded statement was not unquestionably

against the declarant's interest because the statement would explain the potential presence of his semen in Joy Stewart's anus; the statement was not spontaneous, but rather a response to police questioning; the statement was not corroborated by other evidence; and Kenny Stewart was not available for cross-examination at trial. Therefore, the Supreme Court of Ohio did not unreasonably apply federal law when it held that excluding Kenny Stewart's statement did not violate McGuire's constitutional rights, and McGuire was not entitled to habeas relief on this basis.[1]

Second, the independent reweighing of the aggravating circumstances and mitigating factors by the Supreme Court of Ohio cured any error, assuming there was constitutional error, involving omission of a catch-all mitigation factor from the jury instructions at sentencing and McGuire's counsel's failure to challenge that omission before the Court of Appeals of Ohio. If a jury recommends the death penalty partially based on improper aggravating factors, independent appellate reweighing of proper aggravating and mitigating evidence cures the error. *Clemons v. Mississippi*, 494 U.S. 738, 748-50 (1990). The rule in *Clemons* with respect to consideration of improper aggravating factors applies as well to an alleged failure to consider proper mitigating factors, so long as no relevant mitigating evidence has been excluded during the reweighing. *Baston v. Bagley*, 420 F.3d 632, 638 (6th Cir. 2005). McGuire concedes that all the relevant mitigating evidence was admitted, and in reweighing, the Supreme Court of Ohio did consider the factors allegedly excluded by the trial court's jury instruction: McGuire's marijuana use, troubled youth, and school difficulties. Therefore, even assuming the trial court committed constitutional error by omitting a catch-all mitigation factor and appellate counsel performed deficiently in failing to challenge the omission before the Court of Appeals of Ohio, the Supreme Court of Ohio cured any resulting error by its reweighing of the proper aggravating circumstances and mitigating factors.

---

[1] Moreover, it is unclear how evidence of anal sexual contact between Joy and Kenny Stewart would tend to exculpate McGuire. As the coroner testified, McGuire's DNA is DQ Alpha type 3, 4 while Kenny Stewart's DNA is DQ Alpha type 1.1, 2. The sperm samples from Joy Stewart's body contained a DQ Alpha type 3, 4 with a trace amount of DQ Alpha type 1.1, 2. Therefore, the presence of Kenny Stewart's DQ Alpha type 1.1, 2 sperm in Joy Stewart's anus would not explain the presence of DQ Alpha type 3, 4 sperm—McGuire's type—and therefore would not logically exculpate McGuire.

Although we granted habeas relief in another capital case, *Davis v. Coyle*, 475 F.3d 761, 774 (6th Cir. 2007), where the trial court had excluded certain mitigating evidence, that case was different. Reweighing in *Davis* was "not possible because the improperly-excluded evidence was never put into the record." *Id.* Unlike in *Davis*, all the relevant evidence in this case was admitted and in the record when the Supreme Court of Ohio reweighed it. *See* Dist. Ct. Op. at *14 n.6. Cases in which the Supreme Court of the United States has granted habeas relief when a trial court's jury instructions precluded consideration of proper mitigating evidence, *e.g.*, *Abdul-Kabir v. Quarterman*, 550 U.S. 233 (2007), are also inapposite because these cases originated from states that, unlike Ohio, do not reweigh on appeal. McGuire's claim also finds no support in *Gardner v. Florida*, 430 U.S. 349 (1977), in which the Supreme Court held that a due process violation occurs when a trial court imposes a death sentence partially based on information never disclosed to the defendant and which the defendant therefore could not deny or explain. *Id.* at 357-62 (plurality opinion). McGuire's death sentence, by contrast, was based wholly on evidence McGuire heard in open court and could deny or explain by means permitted in the state rules of evidence. Therefore, McGuire was not entitled to habeas relief on this claim.

Finally, with respect to the sufficiency of evidence of rape, we again adopt the district court's reasoning. Dist. Ct. Op., at *26-27. The Supreme Court of Ohio did not unreasonably determine the facts when it held that sufficient evidence supports the jury's verdict that McGuire is guilty of rape, and therefore guilty of aggravated murder and eligible for the death penalty, because McGuire described the sexual contact with Joy Stewart as forcible in his statements to law enforcement and fellow inmates, and DNA evidence did not eliminate McGuire as the source of the sperm in her body. Two layers of deference apply to habeas claims challenging evidentiary sufficiency. *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009). "First . . . we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 205 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Second, even were we to conclude that a rational trier of fact could *not* have found a

petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.* (citing 28 U.S.C. § 2254). Under Ohio law, rape is defined as "sexual conduct with another person [in which] . . . the offender purposely compels the other person to submit by force or threat of force." Ohio Rev. Code § 2907.02(A)(2). Aggravated murder is "purposely caus[ing] the death of another . . . while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit . . . rape." Ohio Rev. Code § 2903.01. The death penalty may be imposed for aggravated murder if "[t]he offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit . . . rape." Ohio Rev. Code § 2929.04(A).

McGuire argues that the evidence was not sufficient to show the compulsion by force or threat of force required under the Ohio rape law. But McGuire told law enforcement officers that Richardson had raped Joy Stewart, and he told fellow inmates that she had refused to have sex with McGuire. Medical evidence of skin abrasions was consistent with compulsion by force. In addition, Stewart's body was found lying on the ground without a coat, out of doors in the Ohio winter. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find that McGuire purposely compelled Joy Stewart to engage in sexual conduct with him, and the Supreme Court of Ohio was not unreasonable when it decided that sufficient evidence supported the jury's verdict that McGuire was guilty of rape. Because sufficient evidence supported the jury's guilty verdict for rape, sufficient evidence supported the jury's findings that McGuire is guilty of aggravated murder and eligible for the death penalty based on rape. Therefore, McGuire was not entitled to habeas relief on this basis.

Because the Supreme Court of Ohio did not unreasonably apply or rule contrary to Supreme Court law, we affirm the district court's denial of habeas relief.