NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0709n.06

Case No. 18-5380

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| JOHN WAYNE COLLINS, | ) | **FILED**<br>Dec 18, 2020<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| Petitioner-Appellant, | ) |  |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
|  | ) |  |
| JAMES DAVID GREEN, Warden, | ) |  |
|  | ) |  |
| Respondent-Appellee. | ) |  |
|  | ) |  |

Before: MERRITT, MOORE, and GIBBONS, Circuit Judges.

**MERRITT, Circuit Judge.** The sole issue in this appeal from the denial of a habeas petition is defendant's challenge to the Kentucky Supreme Court's holding that the state trial court violated his constitutional rights when it joined two counts of murder, and denied his motion to sever. There is no dispute that defendant was involved in the killing of Stevie Collins, a shooting witnessed by defendant's girlfriend Christa Wilson and others. Defendant claims "justification" for the killing based on his emotional state at the time, stemming from his previous violent interactions with Stevie Collins. Forty days after Stevie's murder, defendant's girlfriend Christa was also murdered. The government contends that Christa was murdered by defendant to silence her so she could not testify against him for the murder of Stevie Collins. Defendant denied the charge, and the evidence of his involvement in Christa's murder is circumstantial.

Over defendant's objection, the two murder charges were joined for trial and defendant was convicted of both murders. A closely divided Kentucky Supreme Court upheld his conviction 4-3, with the dissent arguing that the joinder was error because the two murders were not sufficiently related to be properly joined, thereby causing prejudice to defendant. In its ruling denying defendant's federal habeas petition, the district court agreed with the dissent that the joinder of the two murder charges was error, but it found that Collins could not demonstrate that he was prejudiced by any misjoinder. For the following reasons, we affirm the judgment of the district court.

## I.      Facts and Procedural History

The Kentucky Supreme Court summarized the events leading to the conviction of defendant John Collins on two counts of murder as follows:

> On October 10, 2004, Appellant and his girlfriend, Christa Wilson, were visiting Appellant's father, Harold Wayne Collins, and then-stepmother, April Sizemore Collins. Another friend, Natasha Saylor, was also present. Everyone was on the porch of the home, visiting and drinking, when Stevie Collins pulled into the driveway, exited his vehicle and approached the porch. Stevie Collins extended an invitation for them to accompany him to church, and Appellant's father invited Stevie into the house. Appellant's father then shot Stevie in the face, whereupon Stevie fell to the floor and began pleading for his life. Appellant told his father that they could not let Stevie leave there. Appellant's father agreed and instructed Appellant to finish the job. Appellant retrieved his own gun and shot Stevie seven or eight times more, killing Stevie. A possible explanation for Stevie Collins's murder was revealed at trial when witnesses, including Appellant's uncle, Joe B. Collins, testified that his brother, Appellant's developmentally disabled uncle, had been murdered and dismembered in 1997, and that it was believed that Stevie Collins was responsible for the uncle's murder. After the shooting, the group left in three different vehicles and met up again at a relative's house in Henry County, where they continued to drink and sleep.
>
> Meanwhile, police were dispatched to the murder scene. Kentucky State Police Sergeant, John Yates, one of the investigating officers, testified that one 9mm round was discovered on the front porch and eight SKS rounds were found in the yard on either side of the porch. Later, when Appellant's father was arrested, a 9mm

handgun was retrieved from his vehicle. Ammunition fitting the description of the ammunition retrieved from Stevie Collins's body was found in Appellant's vehicle. However, lab results on the weapons were inconclusive.

Although Appellant's girlfriend, Christa Wilson, Appellant's stepmother, April Sizemore Collins, and Natasha Saylor all repeatedly denied any knowledge of Stevie Collins's murder during the initial police investigation, both Natasha and April testified at trial to a substantially similar version of events, consistent with the factual summary set out hereinabove. Both also testified that they initially lied to the police because they had been threatened not to speak of Stevie Collins's shooting. April had been threatened by her then-husband, Appellant's father, while Natasha had been threatened by both Appellant and his father.

Forty days after Stevie Collins was murdered, the body of Christa Wilson was found face down in a creek. She died from a gunshot wound to the head. Christa had last been seen with Appellant. Paint that was discovered on a rock near Christa's body appeared to have been the result of a vehicle scraping the rock, and Appellant's vehicle appeared to have been damaged in the rear bumper area. A sample of the paint was compared with a paint sample taken from Appellant's vehicle, the one he was driving when Christa was last seen with him. At trial, a forensic science specialist for the Kentucky State Police . . . and a defense expert witness testified concerning the results. The [Kentucky State Police] specialist testified that the paint layer from the rock sample was identical to the paint layer from Appellant's vehicle in all areas, i.e., color, type, structure, texture, and elemental composition. The defense expert testified that the substrata of the paint samples differed in thickness and that the bottom layer did not match. For this reason, the defense expert disagreed that the paint samples were identical, but he did admit that the paint samples were extremely similar. Further, the defense expert explained that paint layer thickness varies across each vehicle and, in fact, two samples taken from Appellant's vehicle varied in thickness. He also testified that the difference in substrates could be the result of previous repairs made to the vehicle.

Ultimately, Appellant was tried and convicted for both the murder of Stevie Collins and the murder of Christa Wilson. Appellant had, initially, been indicted for Stevie Collins's murder. While Appellant was awaiting trial on that charge, he was indicted for the kidnapping and murder of Christa Wilson. As a jury was being selected for the Stevie Collins's murder, the Commonwealth moved to consolidate the two cases.[1] Over Appellant's objection, the trial court granted consolidation,

---

[1]The Commonwealth filed a motion to consolidate the two indictments, arguing that the offenses in both indictments were the same in character and based upon the same acts, thereby constituting a common scheme or plan. The Commonwealth also argued that Christa Wilson had been murdered because she was a witness to the murder of Stevie

but gave Appellant a continuance. The Commonwealth filed a notice of intent to seek the death penalty based upon intentional killing and multiple deaths. Subsequently, Appellant moved to sever the offenses, arguing that his option to testify at trial was compromised by joinder given his conflicting theories of defense. The trial court denied the motion, concluding that evidence in each case would presumably be admissible in the other. As stated above, when an impartial jury could not be seated in Clay County, the case was transferred to the Warren Circuit Court. Appellant renewed his motion to sever after transfer, but the Warren Circuit Court also concluded that joinder was appropriate, and denied the motion to sever.

*Collins v. Commonwealth*, No. 2008-SC-000107, 2010 WL 2471839, *1-*2 (Ky. June 17, 2010) (as modified Nov. 18, 2010). Because this habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996, the facts receive a presumption of correctness. 28 U.S.C. § 2254(e)(1).

The trial court sentenced defendant to life without parole for a minimum of twenty-five years on each of the two counts, to run concurrently. Defendant appealed directly to the Kentucky Supreme Court as a matter of right, bypassing the Kentucky Court of Appeals. In his direct appeal to the Kentucky Supreme Court, defendant raised four issues, including the issue before the panel in this appeal: whether the trial court denied defendant his constitutional rights through the prejudicial joinder of the two murder charges. A divided Kentucky Supreme Court denied all of defendant's claims, narrowly upholding his conviction and sentence by a margin of 4–3. *Collins*, 2010 WL 2471839, at *7. The sole issue of disagreement between the majority and the dissent concerned whether the joinder had been proper, with the dissent concluding that the government had not adequately demonstrated that the two murders were sufficiently related to be joined for trial, resulting in reversible error. *Id.* at *9.

---

Collins, and that her murder had been committed in an attempt to cover up defendant's role in Stevie Collins' murder. Over defendant's objection, the trial court ordered the two indictments consolidated for trial, finding that the offenses in both indictments "could have been joined in a single indictment," and that the charges involved in Christa Wilson's murder were directly related to Stevie Collins' murder.

Defendant then attacked his conviction collaterally in state post-conviction proceedings. The trial court denied his petition, and the Kentucky Court of Appeals affirmed the trial court. *Collins v. Commonwealth*, No. 2011-CA-002105, 2013 WL 2257673 (Ky. Ct. App. May 24, 2013) (as modified July 26, 2013). The Supreme Court of Kentucky denied discretionary review.

Defendant filed a habeas petition in federal court pursuant to 28 U.S.C. § 2254, raising six claims, including the issue before us: whether defendant's rights under the Fifth, Sixth, and Fourteenth Amendments were violated when the trial court joined the two murder counts for trial. A magistrate judge issued a Report and Recommendation recommending that the petition be denied, but recommending that the misjoinder issue be certified for appeal. *Collins v. White*, No. 1:15-cv-00026, 2017 WL 8293274 (W.D. Ky. Nov. 14, 2017). The government filed an objection to the Report and Recommendation, arguing that a certificate of appealability should not be issued because there is no clearly established Supreme Court precedent regarding denial of a severance motion, and AEDPA therefore bars any relief. Defendant also filed objections to the Report and Recommendation, including an objection that the Report and Recommendation failed to consider his joinder claim under the proper federal standard. Defendant argued that the Report and Recommendation's reliance on *United States v. Lane*, 474 U.S. 438 (1986), for its severance analysis was an error of law because the Kentucky Supreme Court's ruling relied not on *Lane*, but solely on federal circuit court precedent. The district court overruled both parties' objections to the Report and Recommendation, and denied defendant's habeas petition, largely adopting the reasoning in the Report and Recommendation. *Collins v. Litteral*, No. 1:15-cv-00026, 2018 WL 1440605 (W.D. Ky. Mar. 22, 2018). Only the joinder issue was certified for appeal.

**II.    Discussion**

The sole issue on appeal is defendant's challenge to the Kentucky Supreme Court's holding that the trial court did not violate his constitutional rights under the Fifth and Sixth Amendments when it denied his motion to sever the two murder charges.  Like the corresponding federal rule, the Kentucky rules governing joinder of multiple offenses allow a single indictment if the offenses charged "are of the same or similar character or are based on the same acts or transactions connected together or constituting parts of a common scheme or plan."  Ky. R. Crim. P. 6.18, 9.14; *see also* Fed. R. Crim. P. 8(a).  Misjoinder under these rules rises to the level of a constitutional violation "if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."  *Lane*, 474 U.S. at 446 n.8.  The federal magistrate judge and the district court judge both concluded that the initial decision by the Kentucky trial court to join the two murder counts for a single trial was error, but determined that defendant did not show the necessary prejudice to warrant relief.

On appeal, defendant contends that his constitutional rights were violated because the alleged misjoinder prejudiced him in two substantial ways:  (1) by forcing him to choose between his right to testify in his own defense at trial on the Stevie Collins murder count about his fear of, and history of violence with Collins, and his constitutional right to remain silent concerning the murder of Christa Wilson, a case based on circumstantial evidence; and (2) causing a prejudicial "spillover" effect by combining the two murder counts for trial, with the jury concluding that guilt in one count inferred guilt as to the other, even in the absence of clear and convincing evidence. Defendant argues that detached from the evidence of his involvement in the murder of Stevie Collins, the jury would have been more likely to see the weakness in the circumstantial case against

him for the murder of Christa Wilson.  Defendant argues, therefore, that a reasonable probability exists that the outcome would have been different if he had received a separate trial for each count.

### A.  <u>Review Under the Antiterrorism and Effective Death Penalty Act</u>

AEDPA requires the habeas court to first determine whether the defendant has alleged a violation of a federal constitutional right, and, if so, whether a state court has adjudicated that claim on the merits.  If both requirements are met, then the federal courts must employ the deferential standard of review set forth in 28 U.S.C. § 2254(d)[2] to determine whether to grant the petition. *Williams v. Taylor*, 529 U.S. 362, 367, 402-03, 412-13 (2000).  Defendant argues that the Kentucky Supreme Court did not adjudicate the denial of the severance motion on the merits because it failed to apply the proper federal constitutional standard, and its decision, therefore, is not entitled to any deference under AEDPA.  Specifically, defendant contends that federal law required the Kentucky Supreme Court to decide "whether there was a reasonable probability that the outcome of [defendant's] trial would have been different but for the misjoinder . . . ."  Reply Br. at 4. Defendant contends that the Kentucky Supreme Court failed to undertake this required prejudice analysis.  We agree that the Kentucky Supreme Court's analysis was not conducted deliberately as a federal constitutional claim, but the Court nonetheless identified the required prejudice standard when it said:  "We review the denial of a motion to sever for abuse of discretion, and we will not grant relief unless the refusal to sever prejudiced the defendant."  2010 WL 2471839, at

---

[2] Section 2254(d) provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) Resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

*3 (citations omitted). Citing to a mix of Kentucky and federal law, the Kentucky Supreme Court adequately analyzed the "actual prejudice" to defendant. The prejudice analysis was intertwined with language reviewing the denial of the motion to sever pursuant to Kentucky criminal procedure rules, which do not generally implicate federal constitutional issues, but the Kentucky Supreme Court recited and applied the prejudice standard under federal law sufficiently to warrant labeling it an "adjudication on the merits" for purposes of AEDPA. While the Kentucky Supreme Court did not cite to a United States Supreme Court case, the district court correctly noted that defendant's objection that the Kentucky Supreme Court relied on federal circuit court precedent rather than *Lane* is unavailing. The "failure to cite specific Supreme Court precedent does not itself render an opinion contrary to or an unreasonable application of clearly established federal law[,]" and the Kentucky Supreme Court's reasoning was consistent with *Lane*'s prejudice standard. 2018 WL 1440608, at *6 (citing *Early v. Packer*, 537 U.S. 3, 8 (2002) (a decision may well comport with clearly established law while demonstrating no awareness of the relevant federal standard, so long as neither the state court's reasoning nor its result contradicts federal law)). The prejudice analysis done by the Kentucky Supreme Court was consistent with *Lane*'s prejudice standard, and sufficiently constituted an "adjudication on the merits" under federal law, so its holding is entitled to AEDPA deference on our review.

## B. Prejudice

Turning to our review of the merits, we first note that the United States Supreme Court has held that misjoinder of offenses can cause prejudice amounting to a violation of a defendant's right to a fair trial under the Fifth Amendment, but that "[i]mproper joinder does not, in itself, violate

the Constitution." *Lane*, 474 U.S. at 446 n.8, 449.[3] The Court also recognized that joinder of offenses serves to "'conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial.'" *Id.* at 449 (quoting *Bruton v. United States*, 391 U.S. 123, 134 (1968)). The Court concluded, therefore, that improper joinder only violates the Constitution "if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *Lane*, 474 U.S. at 446 n.8.

Defendant's claim has two potential constitutional implications based on actual prejudice affecting the outcome of trial: (1) the failure to sever the charges put in conflict defendant's Sixth Amendment right to testify on his own behalf with his Fifth Amendment right to remain silent; and (2) the joinder of the two charges created prejudice so substantial as to deny him a fair trial under the Fifth Amendment due to the "bad-acts spillover" effect of combining two unrelated murder charges, resulting in the likelihood that the jury would fail to consider the evidence of defendant's involvement in each murder separately.

---

[3] The parties debate whether *Lane* is clearly established law for purposes of AEDPA. *Lane* resolved a circuit split within the courts of appeal as to whether misjoinder under the Federal Rules of Criminal Procedure is "inherently prejudicial" or subject to harmless error analysis. The Supreme Court concluded that misjoinder is subject to harmless error unless it results in actual prejudice; that is, whether a misjoinder "had substantial or injurious effect or influence in determining the jury's verdict." *Lane*, 474 U.S. at 449 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). The Court said in a footnote that "[i]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny defendant his Fifth Amendment right to a fair trial." 474 U.S. at 446 n.8. That any discussion of this issue is even necessary seems based on two unpublished Sixth Circuit opinions holding that the constitutional argument in *Lane* was dicta. *Tighe v. Berghuis*, No. 16-2435, 2017 WL 4899833, at *2 (6th Cir. Apr. 21, 2017); *Mayfield v. Morrow*, 528 F. App'x 538, 542 (6th Cir. 2013). We have applied *Lane* in several published cases to determine whether a habeas petitioner demonstrated that misjoinder resulted in prejudice so great as to deny the defendant a fair trial. *LaMar v. Houk*, 798 F.3d 405, 428 (6th Cir. 2015); *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013); *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007). Any suggestion that *Lane* does not provide the clearly established law necessary to analyze whether the defendant suffered prejudice sufficient to violate his Fifth Amendment due process right to a fair trial is without foundation. Without discussion, both the magistrate judge and the district court judge relied on *Lane* as the relevant clearly established law, and, like them, we follow the published opinions of this circuit.

1. <u>**Prejudicial effect of forcing defendant to choose between testifying or remaining silent**</u>

Defendant claims he was prejudiced by the joinder when he was forced to choose between exercising his Sixth Amendment right to testify in his own defense regarding the Stevie Collins murder count, and his Fifth Amendment right to remain silent on the Christa Wilson murder count. Defendants are entitled to severance of charges where they can convincingly demonstrate they have both important testimony to offer on one count and a strong need to refrain from testifying on the other count. *United States v. Bowker*, 372 F.3d 365, 383-85 (6th Cir. 2004), *as modified on other grounds by* 125 F. App'x 701 (6th Cir. 2005). Defendant claims that he would have testified about his state of mind, and that he wished to testify to support what he calls a "justification" defense that included testimony

> regarding whether Stevie Collins approached Harold Collins's home with a gun, whether threats were made by Stevie Collins against [defendant] in the weeks before the incident, whether both Harold Collins and Stevie Collins had fired shots prior to [defendant's] involvement in the incident, and whether Stevie Collins had come to Harold Collins's home with what [defendant] believed to be an intent to do harm. But [defendant] chose not to testify because he did not wish to be questioned on the Christa Wilson charge.

Defendant's Opening Br. at 12. Defendant argues that he had important testimony to give in the Stevie Collins charge because while other witnesses could testify as to the events they saw unfold in front of them, only defendant could provide testimony as to his state of mind. Defendant contends that only he could explain fully to the jury his state of mind regarding his knowledge of Stevie's violent reputation, including the killing and dismembering of his uncle years before, and then seeing Stevie arrive at the house with a gun and a liquor bottle. Defendant says only he could explain the fear for his own life and for the others on the premises. Defendant also argues that at the very least, his testimony might have persuaded the jury that he lacked the requisite mental state for first-degree murder and it might have settled on conviction of a lesser-included charge.

The Kentucky Supreme Court majority concluded that defendant was not prejudiced by the joinder of the two murder charges and the denial of defendant's motion to sever, writing:

> Throughout these proceedings, Appellant has argued a particular manner in which he was prejudiced by joinder of the charges; namely, that his right to testify in his own defense was compromised. While Appellant wished to testify in support of his claim of justification for Stevie Collins's murder, he wanted to invoke his privilege not to testify in Christa Wilson's murder. This issue has not been much addressed in our cases. The federal courts, however, under their similar rules of joinder and severance, have noted that, while courts zealously guard a defendant's Fifth Amendment right not to testify at all, "the case law is less protective of a defendant's right to testify selectively." *United States v. Fenton*, 367 F.3d 14, 22 (1st Cir. 2004). A defendant who argues for severance on the basis of selective testimony "must make a 'persuasive and detailed showing regarding the testimony he would give on the one count he wishes severed and the reason he cannot testify on the other counts.'" *United States v. McCarther*, 596 F.3d 438, 443 (8th Cir. 2010) (quoting *United States v. Possick*, 849 F.2d 332, 338 (8th Cir. 1988)). The United States Circuit Court for the Sixth Circuit has held that severance is not required unless the defendant "'makes a convincing showing that he has both important testimony to give concerning one count and a strong need to refrain from testifying on the other.'" *United States v. Bowker*, 372 F.3d 365, 385 (6th Cir. 2004), *vacated on other grounds*, 543 U.S. 1182 (2005) (quoting *United States v. Martin*, 18 F.3d 1515, 1518-19 (10th Cir. 1994)). Otherwise, "severance would be available to a defendant virtually on demand." *Fenton*, 367 F.3d at 23.
>
> . . .
>
> Here, [defendant] has not made a persuasive and detailed showing of "compelling factors" that would justify his selective testimony. He has not shown that his testimony regarding Stevie Collins's murder was vital, as he was able to assert his justification defense through other witnesses who testified to the victim's alleged involvement in the murder of [defendant's] uncle. And he has made no showing of a strong need to refrain from testifying with respect to Christa's murder. *See, e.g., Bowker*, *supra*, and *McCarther*, *supra*. The trial court did not abuse its discretion, therefore, by denying Appellant's severance motion on the ground of selective testimony.

2010 WL 2471839, at *3-*4. The district court agreed with the Kentucky Supreme Court that defendant failed to make the particularized showing of prejudice required because he failed to

demonstrate that he would have provided critical testimony with respect to his justification defense in the Stevie Collins murder count. 2018 WL 1440605, at *6.

The question we face is how to arrive at the proper balance between these two competing constitutional rights. Case law addressing this issue is sparse. *Cross v. United States* summarized the factors to be weighed by a defendant forced to choose:

> Prejudice may develop when an accused wishes to testify on one but not the other of two joined offenses which are clearly distinct in time, place and evidence. His decision whether to testify will reflect a balancing of several factors with respect to each count: the evidence against him, the availability of defense evidence other than his testimony, the plausibility and substantiality of his testimony, the possible effects of demeanor, impeachment, and cross-examination. But if the two charges are joined for trial, it is not possible for him to weigh these factors separately as to each count. If he testifies on one count, he runs the risk that any adverse effects will influence the jury's consideration of the other count. Thus he bears the risk on both counts, although he may benefit on only one. Moreover, a defendant's silence on one count would be damaging in the face of his express denial of the other. Thus he may be coerced into testifying on the count upon which he wished to remain silent.

335 F.2d 987, 989 (D.C. Cir. 1964) (footnotes omitted). Applying the factors from *Cross*, there is no indication in the instant case that defendant would have provided testimony regarding Stevie Collins' murder that could not have been provided by other witnesses, including testimony relating to Stevie's violent reputation in the community, and the killing of defendant's uncle. Defendant's theory was that he had nothing to do with Christa Wilson's murder, and he did not wish to testify, which is what he opted to do. Because other witnesses could have provided ample testimony on Stevie Collins' reputation for violence and his past interactions with defendant, we are not persuaded that the lack of defendant's testimony about his state of mind at the time of Stevie's murder caused defendant prejudice. Defendant therefore has failed to show that his inability to testify regarding his state of mind when he shot Stevie Collins resulted in "prejudice so great as to deny [him] his Fifth Amendment right to a fair trial." *Lane*, 474 U.S. at 446 n.8.

## 2. Prejudicial effect of combining the direct evidence of defendant's involvement in the murder of Stevie Collins with the circumstantial case of his involvement in the Christa Wilson murder

Defendant also claims he was prejudiced because the largely uncontested facts regarding his substantial involvement in Stevie Collins' murder negatively influenced the jury in its assessment of the circumstantial case supporting his involvement in Christa Wilson's murder. He makes the argument in the context of arguing that the joinder combined a "weak" case regarding his involvement in the murder of Christa with the "stronger" case against him for the murder of Stevie Collins. Defendant argues that detached from the strong evidence that defendant was involved in the murder of Stevie Collins, the jury would have had been more likely to discern the weaknesses of the circumstantial evidence that the government put forth to connect defendant to Christa's murder. In sum, defendant maintains that the evidence against him for Christa's murder, presented in a separate trial, would have left the jury with reasonable doubt of his guilt, and he likely would have been acquitted of Christa's murder.

The "sources of prejudice" in joinder arise because the "jury may conclude that the defendant is guilty of one crime and then finds him guilty of the other because of his criminal disposition." *Corbett v. Bordenkircher*, 615 F.2d 722, 725 (6th Cir. 1980) (quoting *United States v. Foutz*, 540 F.2d 733, 736 (4th Cir. 1976)). As we stated in *Davis v. Coyle*:

> Without question, a risk of undue prejudice exists whenever joinder of counts permits introduction of evidence of other crimes that would otherwise be inadmissible. By allowing joinder of offenses, the possibility exists that a jury may use the evidence of one of the charged crimes to infer a general criminal disposition by the defendant; the jury also may confuse or cumulate the evidence of the various crimes charges. The prejudice that [defendant] must demonstrate, however, in order to justify a grant of a writ of habeas corpus is actual prejudice, not merely the potential for prejudice.

475 F.3d at 777 (citations omitted).

The Commonwealth claims that it sought to join the two murder charges because "the offenses in both indictments were the same in character and based upon the same acts, constituting a common scheme or plan." The Commonwealth also stated that it believed that Christa had been murdered because she was a witness to the murder of Stevie Collins. Based on this representation, the trial court ordered the two indictments to be consolidated for trial, stating that it believed that the offenses in both indictments "could have been joined in a single indictment" and that the charges involved in Christa's murder were directly related to Steve Collins's murder.

In reviewing the trial court's ruling, the Kentucky Supreme Court majority assumed that the evidence of defendant's role in Stevie's murder would have been admissible in a separate trial for Christa and that the circumstances of Christa's murder would have been admissible in a separate trial for Stevie's murder:

> Clearly, evidence of Stevie Collins's murder would have been admissible in a separate trial of Christa Wilson's murder, since the alleged motive for the second murder was Appellant's desire to cover up the first murder by eliminating one who had witnessed it. KRE 404(b) (evidence of other bad acts is admissible to prove motive.); *Tucker v. Commonwealth*, 916 S.W.2d 181 (Ky. 1996) (evidence that defendant had shot a witness of a prior crime was admissible to show that charged shooting was similarly motivated.). Similarly, evidence of Christa's murder would have been admissible in a separate trial of Stevie Collins's murder, since evidence that one has attempted to cover up a crime is circumstantial proof of one's consciousness of guilt regarding that crime. KRE 404(b) (evidence of other bad acts is admissible to prove intent.); *Major v. Commonwealth*, 177 S.W.3d 700 (Ky. 2005) (evidence that defendant beat a potential witness was admissible as proof of consciousness of guilt.); *Foley v. Commonwealth*, 942 S.W.2d 876, 887 (Ky. 1996) ("Any attempt to suppress a witness' testimony . . . is evidence tending to show [a consciousness of] guilt."). The trial court did not abuse its discretion, therefore, by deeming the two murders sufficiently related to be tried together.

*Collins*, 2010 WL 2471839, at *4.

The Kentucky Supreme Court acknowledged the potential for undue prejudice where it wrote "[a] primary test for determining whether undue prejudice will result from a joinder of offenses is

whether evidence necessary to prove one offense would be admissible in a trial of the other offense." *Id.* Despite acknowledging the standard, the admissibility analysis undertaken by the Kentucky Supreme Court assumed that the evidence of each murder would have been admissible in the other without undertaking a thorough analysis of the basis for the trial court's finding. In addition, the trial court judge did not give any limiting instruction advising the jury to analyze the evidence regarding each murder count separately to reduce the danger of unfair prejudice.

The Kentucky Supreme Court dissent focused on the lack of evidence supporting the government's theory that defendant's motivation for murdering Christa was to silence her, and concluded that the two charges should not have been joined. The dissent wrote, "The Commonwealth's theory is a mere possible explanation with no evidentiary link that connects together the two murders. The murder of a young woman at the hands of her boyfriend is, unfortunately, an all too common occurrence and the proof that [defendant] did it is hardly dependant [sic] upon the motivation theorized by the Commonwealth." *Id*. at *8. The dissent concluded that the logical extension of such reasoning would result in the propriety of joinder hinging solely on whatever theory the prosecution might cobble together before trial to connect multiple offenses. The dissent concluded that defendant was deprived a fair trial as a result. *Id*. at *8-*9.

Agreeing with the Kentucky Supreme Court dissent, the federal magistrate judge wrote, "[s]omething obvious is missing from the Commonwealth's statement. Proof." 2017 WL 8293274, at *7. The magistrate judge continued, "What is more disturbing, the Commonwealth never sought to prove these allegations at trial, despite the fact that the only evidence linking [defendant] to the death of Christa Wilson was the paint scraping found on a rock near the victim's body that closely matched the paint from [defendant's] car and circumstantial evidence involving

[defendant's] father threatening witnesses of the Stevie Collins murder." *Id*. The magistrate judge concluded that the joinder was "baseless" and may have deprived defendant of a fair trial. *Id*. Despite this conclusion, the magistrate judge found that defendant failed to make the particularized showing of prejudice required to succeed on this claim, relying on Sixth Circuit precedent rejecting the claim that the cumulative effect of multiple charges may have led to his guilty verdict as to Christa Wilson's murder. *Id*. at *8. The magistrate judge stated that although the Kentucky trial court may have erred in joining the two indictments for trial, it is "not reviewing the trial court for the correctness of its decision, but is instead concerned only with whether the failure to sever amounted to an unreasonable application of clearly established federal law," and concluded it did not. *Id*. at *7. The district court agreed, and also noted that the dissenting justices in the Kentucky Supreme Court found the evidence sufficient to support defendant's conviction for Christa Wilson's murder. 2018 WL 1440605, at *6.

Defendant's argument that he was prejudiced when the jury heard the incriminating evidence surrounding defendant's involvement in the murder of Stevie Collins and considered it together with the arguably weaker, circumstantial case against him for the murder of Christa is compelling. The fact that a curative instruction was not given to the jury compounds the error. If this were a case on direct appeal, it would present a very close question. But, AEDPA compels us to give substantial deference to the Kentucky Supreme Court's decision, and defendant has not surmounted that hurdle.

**Conclusion**

The Supreme Court has concluded that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Nevada v.*

*Jackson*, 569 U.S. 505, 508-09 (2013) (per curiam) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). Applying AEDPA deference, the Kentucky Supreme Court's decision must be more than "simply erroneous or incorrect," it must be "objectively unreasonable." Defendant has not met that standard, and for that reason we affirm the judgment of the district court.